**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
MISSISSIPPI, OXFORD DIVISION**

**CLAUDIA LINARES as spouse of ISMAEL LOPEZ,
Deceased, and Edward T. Autry as Administrator of
the Estate of Ismael Lopez, Deceased**                                 **PLAINTIFFS**


**vs..**                                                        **NO. 3:19cv133-NBB-RP**


**CITY OF SOUTHAVEN, STEVE PIRTLE, in his official capacity
as Chief of Police of the Southaven Police Department, OFFICER
SAMUEL MAZE, Individually and in his official capacity as a Southaven
Police Officer, OFFICER ZACHARY DURDEN, Individually and in his
official capacity as a Southaven Police Officer, and JOHN DOES 1-25**     **DEFENDANTS**

---

**BRIEF IN SUPPORT OF DEFENDANT ZACHARY DURDEN'S MOTION TO DISMISS
BASED ON STANDING AND/OR ABSENCE OF JURISDICTION, AND/OR, IN THE
ALTERNATIVE, DISMISSAL BASED ON SOVEREIGN IMMUNITY**

---

### I. Facts and Claims

Claudia Linares as the claimed spouse of Ismael Lopez and Edward T. Autry as the

claimed Administrator of the Estate of Ismael Lopez filed suit on June 19, 2019 for the death of

Ismael Lopez on July 27, 2017 in Southaven, Mississippi. Plaintiff Linares and Plaintiff Autry

claim that Ismael Lopez died as a result of being shot by one or more City of Southaven police

officers who were on duty and acting within the course and scope of their employment as

Southaven police officers. Defendant Zachary Durden is sued as and named as one of those

police officers. Docket # 1 at first unnumbered paragraph and at ¶¶ 1-5, 8,12,38-39.

The shooting is alleged to have taken place at the mutual residence of Ismael Lopez and

Plaintiff Linares at 5881 Surrey Lane, Southaven, Mississippi when Ismael Lopez opened the door to his residence in response to the officers pounding loudly on his front door. Docket # 1 ¶¶ 18-25. Ismael Lopez is alleged to have immediately shut his door after or while his dog Coco was shot by a Co-Defendant Officer Samuel Maze. Docket # 1 ¶31, 35. Plaintiffs allege the officers were attempting to apprehend a suspect for domestic assault and went to an incorrect address than the address they were searching for. Docket # 1 ¶¶ 12-21, 25-30. Plaintiffs cite a report from the Mississippi Bureau of Investigation but failed to attach the cited portions of same or any of said report to the Complaint.

Plaintiffs sue asserting at paragraph IV "Civil Rights Violations by Defendants" arising under the Fourth and Fourteenth Amendments of the "Constitution of the United States" pursuant to 42 U.S.C. § 1983 due to "unlawful seizure" and "excessive force" plus a due process "liberty" deprivation of Ismael Lopez. Docket # 1 ¶¶54-55, 59-61. Plaintiffs describe these as violations of rights secured by the "Constitution of the United States of America and the Constitution of the State of Mississippi." Docket # 1 ¶¶55-56. No provision of the Mississippi Constitution is identified. Plaintiff Linares asserts that she has a constitutional civil rights claim based on her familial association with Ismael Lopez and the loss to her of the society and companionship of Ismael Lopez arising under the "Fourteenth Amendment to the United States Constitution." Docket # 1 ¶ 94. This claim is also made pursuant to 42 U.S.C. § 1983. These will be referred to hereinafter sometimes as the Civil Rights claims or the Section 1983 claims.

Plaintiffs then assert at V "Common law claims" described as "wrongful death" as contemplated by "Mississippi statutory and case law." Docket # 1 ¶ 97 The common law torts asserted include "intentional acts" and "acts of negligence" as well as "willful and wanton conduct." Docket # 1 ¶ 97. Additional torts named are "negligent and/or intentional infliction of

emotional distress." Docket # 1  ¶ 99.  This will be referred to hereinafter sometimes as the state law claims.

Damages sought include for physical injuries to Ismael Lopez, physical pain and suffering of Ismael Lopez, and the "pecuniary value of the life" of Ismael Lopez. Absent the right to legally work in the Unites States then wages and wage earning capacity are not elements of "pecuniary value" for Ismael Lopez or for any person relying on such illegal wages or income. Additional damages sought include medical and funeral expenses and punitive damages. Docket # 1  ¶¶ 101-103.  Plaintiffs seek "injunctive and/or declaratory" relief. Docket # 1  ¶ 101(I).

Exhibit 1 hereto evidences the currently discovered criminal history of Ismael Lopez with a source document at page 1 for the attached pages. Motion Exhibit 1 p. 1 documents that the report referred to in the Complaint also called the MBI or Mississippi Bureau of Investigation Report was obtained by Plaintiff's Tennessee Counsel from the 17th Circuit Court Judicial District Attorney by subpoena and released for public publication and posted on the internet by or facilitated by Plaintiff's Tennessee Counsel on about February 7, 2019. As a result then the report contents contained in the Motion exhibits are admissible as to Plaintiffs as admissions against interest.The released report remains posted on the internet at addresses reflected in Exhibit 1. Pages 2-5 attached to Exhibit 1 posted at the web address for "Part 2" shown at the bottom of Exhibit 1 also appear as pages 103-105 of the internet posting and Exhibit 1 page 5 also appears as page 99 at the same web location all in "Part 2" as described in the cover page of Motion Exhibit 1.

Exhibit 1 demonstrates that at the time of his death that Ismael Lopez was a state and federal fugitive from justice due to multiple prior orders of deportation and due to a conviction for a violent felony in Washington State with an attendant parole or probation sentence which he

seemingly violated. See Motion Exhibit 1 p. 5 for charges of "assault -2 domestic violence" with status guilty and well as guilty for driving under the influence. Exhibit1 p. 1 reflects an arrest on August 31, 2001 by I.N.S. on charges of illegal entry into the United States and excludable alien with disposition on October 30, 2001 of "deported to Mexico." Lopez was arrested by ICE /ERO Memphis on March 3, 2013 for charges of illegal re-entry into the United States and alien removal under Section 212 and 237 with disposition "deported to Mexico" on April 2, 2013. Ismael Lopez was arrested three days after his second documented deportation on April 5, 2013 by Border Patrol in "Sector Laredo" and charged with illegal entry and alien inadmissibility under Section 212. This resulted in reinstatement of the prior deportation order. Three known deportation orders for Ismael Lopez were in force at the time of his death on American soil in Southaven, Mississippi. Plaintiff Linares is also illegally present in the United States, has and had no documentation at relevant times showing her right to be on American soil, and was harboring a fugitive from justice at the time of the death of Ismael Lopez. On information, Plaintiff Linares during various times of custody questioning indicated she was married to two men at the same time.

Exhibit 2 attached hereto and filed in support of this Motion is a certified copy of the entire court file from DeSoto County Chancery Court cause # 18-cv-505 which is the estate court matter from which Plaintiff Autry claims his standing. This reflects the source of Plaintiff's possession of the records attached in Exhibit 1 as the District Attorney for the state entity Judicial District who produced the records to Plaintiff Autry by virtue of a court order. Motion Exhibit 2 at p. 64-65.

Motion Exhibit 2 documents apparent conflicting but sworn statements reflected in said court file of Plaintiff Linares and others which relate to her lack of standing as well support her

lack of and/or suspect credibility. See Motion Exhibit 2 p. 47 and 55 which is a birth certificate from Mexico for the birth of "Rodolfo Avendano Linares" on 22/8/1995 in Mexico, and not in the United States, with mother named the same as Plaintiff of "Claudia Linares Gonzalez" and father named "Reymundo Avendano Tolentino." Contrast this document then with affidavits of "Claudia Linares- Gonzalez" at Exhibit 2 p. 7 and "Rodolfo Linares" at Exhibit 2 p. 6 signed on March 13, 2018 before the petition being sworn to by said affidavits having been filed. Both "Claudia Linares- Gonzalez" and "Rodolfo Linares" swear that the "matters and facts" in the Petition filed March 22, 2018 are "true and correct as therein stated." The Petition contains at paragraph 3 the names and relationships of purported heirs to decedent Ismael Lopez. This includes as sworn to "Claudia Linares Gonzalez" as "adult" with no date of birth given and relationship of "Wife" and "Rodolfo Linares" as "adult" with no date of birth given and relationship of "son" and "Angel Linares" as "adult" with no date of birth given and relationship of "son." No service or process or waiver of process or any form of notice to Angel Linares appears in the estate court file. Either Plaintiff Linares falsely reported paternity to the Mexican authorities at the time of Rodolfo's birth unless she told them the truth but she and Rodolfo appear to have falsely reported on March 13, 2018 when they signed the estate affidavits. It is also possible that Plaintiff Linares falsely reported paternity to Rodolfo resulting in his estate affidavit being a misrepresentation to the Court but not perjury. Plaintiff Linares appears to have falsely represented to at least one set of government authorities if not represented to many.

The apparent misrepresentations of the affiants in the Estate file, the swearing out of waivers to service of process to a petition that had not even been filed with the Chancery Court, and the failure to obtain a waiver of process from or joinder from Angel Linares all void the appointment of Plaintiff Autry and/or render his standing suspect and without legal force and

effect.

Motion Exhibit 3 reflects records from the municipal court of Horn Lake, Mississippi on the arrest of Ismael Rodriguez Lopez when he released his truck to "my mother, Maria Martinez" on 3/6/2013. Both he and "Maria Martinez" signed the top page. Exhibit 3 p. 2 documents the release by Ismael Rodriguz Lopez after his arrest on March 5, 2013 in Horn Lake, Mississippi on charges of  improper tag-altered, suspended driver's license, and vehicle insurance law violations on March 13, 2013. The reason for release is reflected as "released to ICE." This release date of March 13, 2013 matches with Exhibit 1 above when Lopez was arrested by ICE /ERO Memphis on March 13, 2013 for charges of illegal re-entry into the United States and alien removal under Section 212 and 237 with disposition "deported to Mexico" on April 2, 2013. A traffic stop in Horn Lake, Mississippi on March 5, 2013 by a local City of Horn Lake police officer about a mile from where Ismael Lopez was residing on July 27, 2017 at 5881 Surrey Lane in Southaven, Mississippi lead straight to another felony conviction and deportation to Mexico for Ismael Lopez on April 2, 2013.

Motion Exhibit 4 reflects a report of a GoFund Me campaign and a benefit for Ismael Lopez. The benefit states "All proceeds go to Jordan Castillo and Family for funeral expenses" with the comment below that announcement that the parents of Ismael Lopez Rodriguz include his father "Mr. Joel Lopez" and his mother "Concepcion Rodriguez." There is no mention of the person Ismael Lopez declared was his mother "Maria Martinez." It appears that multiple purported mothers and multiple purported fathers as well as multiple but simultaneous marriages were customs surrounding not only Ismael Lopez but also Plaintiff Linares.

Exhibit 5 hereto are records signed by both Rodolfo Linares and officials of the Southaven Police Department for release of guns back to the possession of Rodolfo Linares on

April 24, 2015. The gun purchaser/owner is reflected as Claudia Linares. This release was before

the discovery of the birth certificate of Rodolfo Linares reflecting he was born in Mexico and not

in the United States. Motion Exhibit 5 reflects the driver's license learner's permit of Rodolfo

Linares and his date of birth of "08-22-1995." This date of birth was omitted from the estate

petition but is an exact match to the birth certificate at Motion Exhibit 2 at pp. 47 and 55 . The

names on the driver permit and the birth certificate are also an exact match with each reflecting

the name "Rodolfo Avendano Linares." Rodolfo was too young to supply the name and dates for

the Mexican birth certificate yet the match with the Mississippi issued driver's permit is clear

corroboration of the birth certificate.

Defendant Durden asserts with credible documentary support that Plaintiff Linares was not

legally married to Ismael Lopez, that Plaintiff Linares has no standing to sue, no standing exists

for the claims related to Ismael Lopez, that Plaintiff Autry was not properly appointed as

Administrator, and/or that Administrator Autry was appointed Administrator by virtue of

apparent conflicting sworn affidavits and/or material misrepresentations and/or contrary to the

requirements of law thereby voiding his appointment ab initio. Neither Plaintiff has standing.  All

state law claims are barred by sovereign immunity as applied by and retained by the Mississippi

Tort Claims Act including but not limited to lack of any presuit tort notice, individual immunity,

and/or statutes of limitations. The persons claimed as legally related to Ismael Lopez in the estate

proceeding seemingly were not related by law including the laws of the State of Mississippi or

any other applicable laws. Relationships not carrying the dignity of being legally sanctioned or

legally protected provide no heirship rights in Mississippi or civil rights under the Fourth or

Fourteenth Amendments of the United States Constitution.

**2. Standard**

This Motion is brought under both Rule 12(b)(1) for lack of jurisdiction and/or lack of

standing and/or 12(b)(6) for lack of standing, and/or based on the applicable time bar due to the

expiration of the statute of limitations on the state claims. The jurisdictional issue of standing is a

legal question. Motions filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure

challenge the district court's subject matter jurisdiction to hear a case. *Ramming v. U. S.,* 281 F. 3d

158, 161 (5th Cir. 2001). If a Rule 12 (b)(1) motion is filed simultaneously with other motions under

Rule 12, the court should consider the Rule 12 (b)(1) jurisdictional attack prior to ruling on any

attack on the merits. *Id*. As the party asserting jurisdiction, the "plaintiff constantly bears the burden

of proof that jurisdiction does in fact exist." *Id. Gunter v. Bryant*, 2018 WL 3650244, *1 (N. D. Miss.

Aug. 1, 2018). In determining whether the Trial Court has subject matter jurisdiction, the Court "has

the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1)

the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the records;

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Crane v. Johnson*, 783 F. 3d 244, (¶¶ 3-6) (5th Cir. 2015). In accord see *Campaign for Southern

Equality v. Mississippi Department of Human Services*, 175 F. Supp. 3d 691, *698 (¶¶1-3) (S.D.

Miss 2016).

"Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the

complaint because if fails to state a legally cognizable claim." *Id.* Fed. R. Civ. P. 12(b)(6). "The

pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal

Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief

must contain 'a short and plain statement of the claim showing that the  pleader is entitled to relief."

*In re McCoy*, 666 F. 3d 924, 926 (5th Cir. 2012). Matters of public record may be referred to and

relied upon. *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498-99 (5th Cir. 2000). The Court may take "judicial notice of documents in the public record..., and may consider such documents in determining a motion to dismiss." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005).

A Complaint assessed under Rule 12(b)(6) is assessed under the plausibility standard. "The tenet that a Court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662,129 S. Ct. 1937,1949, 173 L. Ed. 2d 868 (2009). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id*. Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc*., 615 F. 3d 412, 417 (5th Cir.2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief...[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. 678. Plaintiffs omitted from the Complaint any reference to the citizenship of either Ismael Lopez or Plaintiff Linares. Plaintiffs omitted from the Complaint any allegations about the paternity or citizenship of Rodolfo. That information may then be derived from the Exhibits while still construing the allegations of the Complaint in favor of Plaintiffs. See Complaint docket #1 at ¶¶ 1-2, 55.

### 3. No Standing

Plaintiffs have no standing. The claim is "speculative" as to whether the injury will be "redressed by a favorable decision" as the Plaintiff lack any form of standing due to the absence of

any legally recognized relationship to support standing. *Lujan v. Defenders of Wildlife*, et al, 112 S.

Ct. 2130, *569(¶¶3-4)(1992). Absent a legally sanctioned relationship then neither Plaintiff has

standing. Common law marriage does not exist in Mississippi. The requirements of marriage are

statutory. See Miss. Code Ann § 93-1-15. Cohabitation is not marriage and no right to sue as alleged

in this matter exists. "The legislature has neither condoned cohabitation nor extended the rights

enjoyed by married individuals to those who merely cohabit." *Davis v. Davis*, 643 So. 2d 931, ¶ 4

(Miss. 1994). On information, Plaintiff Linares has no standing due to her status as a common law

only claimed marital relationship that she refers to as wife, or as a live in girlfriend, or as a person

with two husbands, or due to bigamy, or as a result of a series of religious or social event ceremonies

relative to the theme of marriage not sanctioned by applicable civil law. Plaintiff Linares and Ismael

Lopez were not legally married to each other and/or Ismael Lopez was not the father of those so

claiming in the Estate of Ismael Lopez. The records further reflect the issue of the Ismael Lopez and

Claudia Linares using multiple spellings of their names or having alias names. See Motion Exhibit

1 at pages 2-5, Exhibits 2,3,4, and 5.

Standing is a "threshold matter of jurisdiction." *Cole v. General Motors Corp.*, 484 F. 3d 717,

721 (5th Cir. 2007), that may be raised by the court at any time. *Sommers Drug Stores Co. Emp.

Profit Sharing Trust v. Corrigan*, 883 F. 2d 345, 348 (5th Cir. 1989). The court must inquire "whether

the constitutional or statutory provision on which the claim rests properly can be understood as

granting persons in the plaintiff's position a right to judicial relief." *Clay v. Garth*, 2012 WL

4470289 (N.D. Miss. Sept. 27, 2012)(citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

For the exercise of federal jurisdiction to be proper, the party seeking to invoke federal

jurisdiction must have constitutional standing under Article III of the United States Constitution.

*Bond v. United States*, 564 U.S. 211, 217, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011;. *Crane v.*

*Johnson*, 783 F. 3d 244 (5th Cir. 2015); *Choice Inc. v. Greenstein*, 691 F. 3d 710, 714(5th Cir. 2012). The party seeking to invoke federal jurisdiction has the burden of establishing standing. *Osterweil v. Edmonson*, 424 Fed. Appx. 342, 343 (5th Cir. 2011)(per curiam)(citing *United States v. Hays*, 515 U.S. 737, 743, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995)).

To establish standing, a plaintiff must have suffered an injury in fact-an invasion of "a legally protected interest" which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Harvey v. Caesars Entertainment Operating Co., Inc.*.55 F. Supp. 3d 901, ¶9 (N.D. Miss. Sept. 24, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351(1992)).

Neither Plaintiff in this case has Article III standing or statutory standing. The Article III standing issue relates to the absence of Fourth and Fourteenth Amendment civil rights of Ismael Lopez or of Claudia Lianres or derivatives of same for Plaintiff Autry and so absent for those who now seek to stand in place for the death of Ismael Lopez. Plaintiff Linares is also in the United States in violation of United State law. Absent a valid marriage to Ismael Lopez or some other legally protected interest then she has no standing and no right to relief. *Rhyne v. Henderson County*, 973 F. 2d 386, 390 (5th Cir. 1992).

Ismael Lopez was present in the United States at the time of his death as an illegal alien on American soil. That is not the reason alone there is no standing but a beginning point for analysis. In addition, Ismael Lopez was never in the United States by permission but was present in the United States at the time of his death by virtue of his then being in violation of federal law and in violation of multiple court orders prohibiting his entry in the United States and his presence in the United States. These are distinctive and compelling circumstances in an area of law in which Congress has been full throated and vociferous. Any Fourth Amendment civil rights that he even arguably could

have gained upon entry to the United States never came to fruition or were lost by virtue of his own acts and omissions on top of illegal entries and/or were negated by his lack of legal and other proper contacts with the United States, and his demonstrated habitual contempt of the laws of and court orders of the United States. Ismael Lopez had insufficient connections with the United States of the type, dignity, and caliber required to attain standing for Fourth Amendment protection. Ismael Lopez was a convicted felon for a crime of violence while in the United States and fugitive from justice in violation of many laws and court orders with an outstanding warrant for deportation as well as being a felon in possession and illegal alien in possession of a firearm at the time he opened his door to the knock of the described Southaven police officer. His civil rights relative to use of force, if they existed, were subsumed by congressional action into the immigration laws. See example in *De La Paz v. Coy*, 786 F. 3d 367 (2015). This is evidenced by the code sections Ismael Lopez was charged with shown in Motion Exhibit 1. If he ever had Fourth Amendment or Fourteenth Amendment civil rights, they were lost by his own conduct and misconduct. Ismael Lopez may have been a person on American soil but he was not one of the "We, the People of the United States" entitled to the civil rights invoked in this lawsuit. See Preamble, United States Constitution. The Fourth Amendment explicitly states that it's coverage extends to the "right of the people" or members of the polity of the United States.

Plaintiff Claudia Linares is also an illegal alien who harbored a convicted felon also both illegally in possession of a firearm. Plaintiff Linares remains apparently present in the United States without permission and in violation of the laws of the United States. There is no Article III standing for any of the federal civil rights claims plus the claimed federal familial claims of Plaintiff Linares do not exist as a matter of law as Plaintiff Linares and Ismael Lopez were not legally husband and wife under the laws of the State of Mississippi or any applicable law. *Rhyne v. Henderson County*,

973 F. 2d 386, 390 (5th Cir. 1992).

"Statutory standing is not indicative of Article III jurisdictional standing." *Camsoft Data Sys., Inc. v S. Elecs. Supply, Inc*., 756 F. 3d 327, 332 (5th Cir. 2014). "If a plaintiff does not have statutory standing, he lacks a cause of action, and the actions should be dismissed under F. R. Civ. P. 12 (b)(6)." *Walker v. New Orleans City, La.*, No. 16-31229, 2017 WL 3467879, at *1 (5th Cir. Aug. 11, 2017)(per curiam)(citing *Malvino v. De Iluniversita*, 840 F. 3d 223, 229-30 (5th Cir. 2016); *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F. 3d 787, 795 n. 2 (5th Cir. 2011). A lack of constitutional standing should be granted under F. R. Civ. P. 12(b)(1). *Royal v. Boykin*, 2017 WL 3897168, *2(N.D. Miss. Sept. 6, 2017).

In order to have statutory standing to bring a section 1983 claim on behalf of another, a plaintiff must have standing under the state wrongful death or survival statutes. *Pluet v. Frasier*, 355 F. 3d 381, 383 (5th Cir. 2004). See also *Rodgers v. Lancaster Police & Fire Dep't*, 819 F. 3d 205, 208-09 (5th Cir.), *cert. denied*, 137 S. Ct. 304, 196 L. Ed. 2d 223(2016), *reh'g denied*, 137 S. Ct. 545, 196 L. Ed. 2d 440 (2016). Standing to bring a section 1983 claim "is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in [Section 1983's] administration. *Walker*, 2017 WL 3467879, at *1.

The State of Mississippi civil licensing laws on marriage provide mandatory requirements to achieve the legally protected status of and interests of married persons which requirements and a license to marry are required for standing to sue as a widow or statutory relative of a deceased person. *Gunter v. Bryant*, 2018 WL 3650244 (N. D. Miss. Aug. 1, 2018). Absent Plaintiff Linares being legally married to Ismael Lopez at the time of his death then Plaintiff Linares has no standing. The legal relationship of marriage is required for relief sought by Plaintiffs as a "legally protected interest" is a requirement of standing. *Gunter v. Bryant*, 2018 WL 3650244, *2 (N. D. Miss. Aug.

1, 2018)( quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351(1992)).

This motion is more than a facial attack but also a factual attack supported by evidence. As a result "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F. 2d 404, 413 (5th Cir. 1981). "A factual attack may occur at any stage of the proceedings." *Saenz v. Transamerica Life Insurance Company*, 2017 WL 635570, *2 (S.D. Tex. Feb. 16, 2017).

Plaintiffs must also have standing for the requested declaratory and/or injunctive relief. To obtain injunctive relief, Plaintiffs must show that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate" and not "conjectural" or "hypothetical." *Clay v. Garth*, 2012 WL 4470289 (N.D. Miss. Sept. 27, 2012)(citing *City of Los Angeles v. Lyons*, 461 U. S. 95, 101-102,(1983)). Plaintiffs herein asked for injunctive and declaratory relief very similar as was sought and denied due to the absence of any irreparable injury as to future potential conduct in *Clay v. Garth* at *2. See denial of relief in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351(1992) as plaintiffs did not assert sufficiently imminent injury to have standing. Plaintiffs do not meet the restrictive standing doctrine of *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).

### A. Estate Irregularities

The administrative appointment of Plaintiff Autry is voided by either misrepresentations or by errors in the appointment process or by both. The waivers for service of process were signed at a time when no petition had been filed. Those are invalid waivers. No process was served on the

purported heir and son "Angel" in Mexico and no waiver obtained from the named person. Heirship has not been determined. See Miss. Code Ann. § 91-1-29. Purported son in the United States Rodolfo signed an affidavit of his paternity in direct conflict with his birth certificate. Plaintiff Linares signed an affidavit in direct conflict with her son Rodolfo's birth certificate. Rodolfo cannot be either an heir-at-law or wrongful death beneficiary of Ismael Lopez absent a timely adjudication required by Miss. Code Ann. § 91-1-15 or proof of a formal adoption by Ismael Lopez or valid birth certificate reflecting Ismael Lopez as his father. The time for same expired.

Mississippi law determines whether either Plaintiff has standing as to heir status and inheritance rights. *Dalton v. McLarty*, 2016 WL 2968556 (N.D. Miss 2016). See decedent's grandfather without standing as statute does not list grandfather and due to errors in setting up estate administrator in *Burley v. Douglas*, 26 So. 3d 1013, ¶¶ 4-11 (Miss. Ct App. 2010). Mississippi's wrongful death statute at Miss. Code Ann. § 11-7-13 controls. *Pioneer Cmty. Hosp. of Newton v. Roberts*, 214 So. 3d 259, 259-60 (Miss. 2017). The statute provides "when the death of any person ...shall be caused by any real, wrongful, or negligent act or omission,...if death had not ensued , have entitled the injured party ...to maintain an action and recover damages in respect thereof." The statute states further in pertinent part that "an action for such damages may be brought in the name of the personal representative of the deceased person...for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband...or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned...The list of persons in this section who may bring a wrongful death action is exclusive and only those persons shall be considered interested parties who are entitled to bring an action under this section...Damages for the injury and death of a married man shall be equally distributed to his wife and children." In accord *Long v. McKinney*, 897 So. 2d 160, 168 (Miss. 2004).

*Burley v. Douglas*, 26 So. 3d 1013, ¶¶ 4-11 (Miss. Ct App. 2010) discussed the issues of appointment of an administrator by the Chancery Court whose edicts were rendered without power to properly act due to misrepresentations to the Court. *Id*. at n. 14 (citing *Delta Health Group, Inc. v. Estate of Pope*, 995 So. 2d 123 (Miss. 2002)). In *Pope* the Court was submitted a petition for appointment wherein the petitioner "falsely testified that he was the nephew"of the decedent. Later testimony proved this not true and that the petitioner was the great-nephew of the decedent. This was a misrepresentation of significance. Plaintiff Linares appears to have misrepresented to the Chancery Court of DeSoto County legal relationships thereby rendering void or voidable the appointment of Plaintiff Autry. Her conflicting testimony to officials  in Mexico and the United States as to the parentage of her child Rodolfo supports the wisdom of and fairness of requiring, at minimum, proper documentation to support all claims and her alleged standing and all her marriages, her divorces, and the official records of the purported marriages and/or divorces  to Ismael Lopez, the father on the birth certificate of Rodolfo named Reymundo Avendano Tolentino, and any other spouses. The birth certificates of all children claiming should also be produced by her. Her testimony carries the cloud of misrepresentation and pattern deceit. Fraud vitiates. The attached exhibits cast her credibility into significant doubt. Credible documentary evidence must be produced before she or Plaintiff Autry may proceed in any regard. Her representations of marriage and parentage to the DeSoto County Chancery Court do not seem based on law or truth or the legal requirements in Mississippi or the United States for either marriage or paternity. Mexican family customs do not constitute American legal compliance.See for example of first line statutory group of beneficiaries held nonexistent as decedent "Walter never married " in *Jaquith Nursing Home v. Yarbrough,* 99 So. 3d 745, ¶¶ 13-14 (Miss. 2012). Legal marriage is a prerequisite to standing under this statute for both Plaintiff Linares and the derivative claim of Plaintiff Autry.

Mississippi's survival statute is Miss. Code Ann. § 91-7-233. This provides that an administrator may commence and prosecute any personal action "which the testator or intestate might have commenced and prosecuted." The survival statue allows only the personal representative to bring suit. *Clark Sand Co. v. Kelly*, 60 So. 3d 149, 154 (Miss. 2011). This specifies the administrator for an intestate. *Stone Inv. Co. v. Estate of Robinson*, 82 So. 3d 631, 641 (Miss. Ct. App. 2011). The same issues discussed above for the state law claims as well as those discussed for the Section 1983 claims also apply to all claims under this statute.

### B. Statutory Irregularities

The wrongful death action is not part of the estate of the deceased. *Partyka v. Yazoo Development Corp.*, 376 So. 2d 646, 650 (Miss. 1979). Only those individuals listed in the wrongful death statute may bring this independent cause of action. *Partyka*, 376 So. 2d at 650 (citing *Hasson Grocery Co. v. Cook*, 196 Miss. 452, 459, 17 So. 2d 791 (1944)). Wrongful death claimant status based on status as "heir-at-law" is not the same as a wrongful death beneficiary. The statute lists beneficiaries categorically. Edward T. Autry claims as Administrator of the Estate of Ismael Lopez, deceased. He is not a beneficiary but an appointee. *Burley v. Douglas*, 26 So. 3d 1013, 1021-1023 (Miss. 2009). *Estate of Smith v. Smith*, 130 So. 3d 508, ¶ 18 (Miss. 2014). Absent verified marriage documents and verified divorce documents from her other purported husband then Plaintiff Linares cannot establish statutory standing. Plaintiff Linares remains without credibility and has no standing as a common law spouse or bigamous paramour or partner by romantic affinity.

The Mississippi Wrongful Death statute of Miss. Code Ann. § 11-7-13 provides at the second to last paragraph of same that "the list of persons in this section who may bring a wrongful death action is exclusive and only those persons shall be considered interested parties who are entitled to bring an action under this section." *Long v. McKinney*, 897 So. 2d 160, 168(¶ 28) (Miss. 2004).

"These statutory provisions have been interpreted to allow a suit by the personal representative, or by the wrongful death heirs, but not by both." *Jones v. Steiner*, 481 F. 2d 392 (5th Cir. 1973). *Long v. McKinney*, 897 So. 2d 160, 168(¶ 29) (Miss. 2004).The statute has generally been interpreted to provide exclusive authority to a wrongful death beneficiary who files suit to pursue the claims of the estate. *Hornburger v. Baird*, 508 F. Supp. 84 (N.D. Miss. 1980).

The Mississippi Wrongful Death statute of Miss. Code Ann. § 11-7-13 was amended in 1981 to allow illegitimate children to inherit from their biological parents. Before that time Mississippi did not allow illegitimate children to inherit from their unmarried biological parents. The relevant section of the statute now reads "The provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15." Miss. Code Ann. § 91-1-15 is titled "Illegitimate children." This covered all remedies. Remedy is defined at Miss. Code Ann. § 91-1-15 (1)(a) as "the right of an illegitimate to commence and maintain a judicial proceeding to enforce a claim to inherit property from the estate of the natural mother or father of such illegitimate, said claim having been heretofore prohibited by law." Miss. Code Ann. § 91-1-15 (1) ( c ) defines "illegitimate" which means a person who at the time of his birth was born to natural parents not married to each other. Miss. Code Ann. § 91-1-15 (1)(d) states that "natural parents" means "the biological mother or father of the illegitimate." Plaintiffs have not complied with the requirements of this law for two purported heirs and claimed sons of Ismael Lopez. The name of Ismael Lopez does not appear on the birth certificates of Rodolfo and the birth certificate of Angel has not been located. If Ismael Lopez was the biological father of either while Plaintiff Linares was married to another or the father without legal marriage to the

mother or if Plaintiff Linares lied about paternity on the birth certificates then the opportunity provided by law to amend said birth certificates has lapsed. Miss. Code Ann. § 91-1-15 (3) created the right of an illegitimate to inherit from a natural father if the statute was followed. It was not.

The same statute provides that no claim of inheritance based on an adjudication of paternity, after the death of the intestate, by a court outside the State of Mississippi shall be recognized unless:

(I) Such court was in the state of residence of the intestate at the time of the intestate's death;

(ii) The action adjudicating paternity was filed within ninety (90) days after the death of the intestate;

(iii) All known heirs were made parties to the action; and

(iv) Paternity or legitimacy was established by clear and convincing evidence."

There is a one year time from date of death time bar for the illegitimate heirship determination if filed in the Courts of Mississippi. There is a 90 day period of limitations from date of decedent's death if the procedure is handled in an out of Mississippi court. If the determination of heirship for an illegitimate child is not done within the statutory time limits then such child cannot inherit from decedent's estate. *Estate of McCullogh v. Yates*, 32 So. 2d 403, ¶ 24(Miss. 2010). In accord see also *In re Estate of Davidson*, 794 So.2d 261, 266 (Miss. Ct. App. 2001)."Under Mississippi law, failure to bring a timely paternity claim bars the nonmarital child's right to inherit as an heir under our statute." *Estate of Elmore v. Williams*, 150 So. 3d 700, *701 (¶ 6) (Miss. 2014). If Roudolfo or Angel are biological children of Ismael Lopez then his or their claims are time barred as both failed to pursue the available remedies to have amended birth certificates. In accord see also *Prout v. Williams,* 55 So. 3d 195, ¶ 4 (Miss. Ct App. 2011).

### 5. State Law Claims: Mississippi Tort Claims Act

All state law claims are subject to the Mississippi Tort Claims Act (MTCA) found at

Miss. Code Ann. § 11-46-1, et seq. Miss.Code Ann.§ 11-46-1(f) extends coverage of the MTCA to any person sued for acts or omissions as an employee of a covered entity. Defendant Durden was sued as an employee of the City of Southaven, Mississippi acting within the course and scope of employment at the time of the operative liability events. Complaint docket #1 at ¶ 8. "Employee" is defined at Miss. Code Ann. § 11-46-1 (f) as any "employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials or persons acting on behalf of the state or a political subdivision in any official capacity." Miss. Code Ann. § 11-46-1 (h) defines "Injury" means death, injury to a person, damage to or loss of property or any other injury that a person may suffer that is actionable at law or in equity." Miss. Code Ann. § 11-46-1 (i) states "political subdivision" means any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to any county, municipality." Miss. Code Ann. § 11-46-1 (k) states "Law" means all species of law, including but not limited to, any and all constitutions, statutes, case law, common law, customary law, court order, court rule, court decision, court opinion, court judgment or mandate, administrative rule or regulation, executive order, or principle or rule of equity."

Miss.Code Ann.§ 11-46-7(1) provides "The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary." Miss. Code Ann.§ 11-46-7(2) dictates that "An employee may be joined in an action against a governmental entity in a

representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." This statute affirms the individual immunity of Zachary Durden under the MTCA. Miss. Code Ann.§ 11-46-7(6) states the duty to defend and pay any judgment by the governmental entity "shall continue after employment with the governmental entity has been terminated, if the occurrence for which liability is alleged happened within the course and scope of duty while the employee was in the employ of the governmental entity." Miss. Code Ann.§ 11-46-7(7) provides individual defendant immunity for Zachary Durden by virtue of "For purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission or an employee within the time and at the place of his employment is within the course and scope of his employment." See reiteration of individual immunity at Miss. Code Ann. § 11-46-5(3). All state law claims against Zachary Durden are controlled by the Mississippi Tort Claims Act. See Plaintiff's allegations that all actions of Zachary Durden were within the course and scope of employment with the City of Southaven, Mississippi. Complaint docket #1 at 8. Zachary Durden has full personal immunity by virtue of the retained sovereign immunity of the MTCA plus the protection of the statutes of limitation and due to the failure of Plaintiff's give the mandatory pre suit tort notice in order for the right to sue to accrue.

The Mississippi Tort Claims Act requires that before any lawsuit is filed that the claimant give a pre suit tort notice. Neither Plaintiff complied with Miss. Code Ann. § 11-46-11 including (1) thereof requiring a 90 day pre suit statutory compliant tort notice before filing suit. As a result all state law claims are barred for failure to comply with the pre suit requirements of the MTCA. *University of Mississippi Medical Center v. Easterling*, 928 So. 2d 815 (Miss. 2006) held the ninety day notice rule is  "a hard-edged, mandatory rule which is"..."strictly enforced."

Page 21 of  27

"The Mississippi Tort Claims Act (MTCA) imposes stringent requirements on persons wishing to sue state agencies, subdivisions, and employees. See *Little v. Mississippi Dep't. of Human Servs.,* 835 So. 2d 9, 12 (Miss. 2002). One of those requirements instructs the prospective plaintiff to serve a detailed Notice of Claim upon a specific government official. See Miss. Code Ann. § 11-46-11. If the prospective plaintiff wants to sue a county, for example, she must send her Notice of Claim to the Chancery Clerk of that county. *Id.* § 11-46-11(2)(a)(i)(1). Here, Davis served a Notice of Claim upon the Hinds County Board of Supervisors and the Sheriff's Department. (Docket citation omitted).That was incorrect. Mississippi law required her to serve the Chancery Clerk. Because Davis did not serve the correct official, all of her claims brought pursuant to the MTCA must be dismissed." *Davis v. Hinds County, Mississippi, et al,* 2016 WL 2994097, *2, ¶ 12.(applying Mississippi law).  In accord Miss. Code Ann. § 11-46-11(1)-(2). See also *Jones v. City of West Point, Miss*., 2015 WL 5227604, *1, *2 (N. D. Miss. Sept. 8, 2015). In *Jones* the plaintiff "argues briefly" that the City did have actual notice and references in support a letter attached to the Complaint from a third party. The Court held that "actual notice"..."does not cure otherwise defective notice."  All state law claims are barred due to the failures of Plaintiffs to comply with the requirement of a pre suit tort notice in accord with the directives of the statute.

In addition all state law claims are barred by the one year statute of limitations. Miss Code Ann.§ 11-46-11 (3)(a) mandates that "All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after."  Miss Code Ann.§ 11-46-11 (3)(b) specifies "failure to file suit within the time allowed is an absolute bar to any further proceedings under this chapter." Miss Code Ann.§ 11-46-11 (3)(d) (ii) amplifies with "The limitations period

provided in this section controls and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations that would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter." In Mississippi intentional torts carry a one year statute of limitations as does the tort of intentional infliction of emotional distress. *Jones v. Fluor Daniel Services Corp.*, 32 So. 3d 417 (Miss. 2010). All state law claims must be dismissed for each of the above cited reasons.

### 6.   Federal Civil Rights Claims do not exist

Plaintiffs name the Fourteenth and Fourth Amendment as the predicates for their section 1983 claims. The type of claims asserted are analyzed under only the Fourth Amendment. "In *Graham v. Conner*, the Supreme Court rejected the notion that excessive force claims were governed by a generic 'substantive due process' standard employed by many federal courts. 490 U.S. at 393. The Court held that '*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.' *Id* at 395 (emphasis in original) (quoting and explaining *Garner*, 471 U.S. at 7-8). The Court reasoned that 'because the Fourth Amendment provides an explicit textural source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' *Id.*(citations omitted); accord *Martinez-Aguero v. Gonzalez,* 459 F. 3d 618, 624 (5ᵗʰ Cir. 2006)." *Mendez v. Poitevent*, 2014 WL 12639318, *12 (W.D. Tex. Sept. 30, 2014) (quoting and citing *Graham v.* Conner, 490 U. S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)

and *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

The Fourth Amendment provides,"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend, IV. In *United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990), the Supreme Court addressed the question of the Fourth Amendment's extraterritorial reach. The claim surrounded a warrantless search of premises of a Mexican national in Mexico by United States DEA Agents authorized by Mexican officials and was reviewed under a Fourth Amendment suppression motion. On appeal the U.S. Supreme Court began it's review of the Circuit Court opinion by focusing on the text of the Fourth Amendment. The Court noted that the Fourth Amendment "extends its reach only to 'the people,'"which "seems to have been a term of art employed in select parts of the Constitution," including the Preamble, Article I, and the First, Second, Fourth, Ninth, and Tenth Amendments. *Id.* at 265, 110 S. Ct. 1056. The Court found this "textural exegesis" to suggest that "the people" in the Constitution "refers to a class of persons who are part of the national community or who have otherwise developed sufficient connection with this country to be considered a part of that community." *Id*. The Court then examined the history of the drafting of the Fourth Amendment and concluded that "the available historical data shows...that the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory." *Id.* at 266, 110 S. Ct. 1056. The Supreme Court distinguished cases that claimant Verdugo-Urquidez relied on for the suppression request noting that those cases "established only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id*. at 271, 110 S. Ct. 1056. The Court criticized and rejected the

Court of Appeals ruling that had applied a global application of the Fourth Amendment. The Court then concluded that the "Fourth Amendment has no application." *Id*. at 274-75, 110 S. Ct. 1056.

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990), clarified the Fourth Amendment's application to illegal aliens by use of the sufficient connections test and its related interpretation of the Fourth Amendment text. *District of Columbia v. Heller*, 554 U.S. 570, 580  128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) favorably cited *Verdugo-Urquidez*'s definition of "the people" and again stated the test is that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." The current law is that Ismael Lopez had arguable Fourth Amendment civil rights only when he came within the territory of the United States and developed voluntary substantial connections with this country. Ismael Lopez never established voluntary substantial connections with this country as shown by Motion Exhibit 1 and there is no constitutional claim. The application of the sufficient connections requirement of *Verdugo-Urquidez* relied on more than just the text of the Fourth Amendment as the opinion cites the history of the Fourth Amendment at 266, 110 S. Ct. 1056, prior precedent at 268-73, 110 S. Ct. 1056, and practical consequences at 273-75, 110 S. Ct. 1056. Aliens in the United States may acquire Fourth Amendment protection. See for example *Martinez-Aguero v. Gonzalez*, 459 F. 3d 618, 625 (5th Cir. 2006) holding that an alien's regular and lawful entry of the United States pursuant to a valid border-crossing card and ...acquiescence in the U.S. system of immigration constituted voluntary acceptance of societal obligations and rising to the level of "substantial connections" sufficient to invoke the Fourth Amendment. In contrast the status of Ismael Lopez was more like that of a deported alien standing at the border of the United States and Mexico but still in Mexico as he had no permission to enter and multiple Court orders that barred entry. The analysis of no Fourth Amendment rights exist for "undocumented aliens" and so same are

barred from a Bivens action is compelling in *De La Paz v. Coy*, 786 F. 3d 367 (2015). Relief for civil rights violations was available only in the context of the INA. See in support also the definition of "the people" in the context of the Second Amendment holding that an illegal alien in the United States has no Second Amendment Constitutional right. *United States v. Portillo-Munoz*, 643 F. 3d 437, 440 (5th Cir. 2011).

In similar manner there is no constitutional protection for Claudia Linares for her familial claims asserted for herself absent a legally valid marriage to Ismael Lopez at the time of his death. *Stevens v. Holder*, 966 F. Supp. 2d 622 (E.D. Va. 2013); Plummer v. *Town of Somerset*, 601 F. Supp. 2d, 358, 366 (D. Mass. 2009). The constitutional rights she seeks relief under are also based on her status under Mississippi civil law. *Walker v. Henderson*, 239 F. 3d 366, 390 (5th Cir. 2000).

### 7. Conclusion

Some rights relative to use of force by way of the Fifth Amendment rights have been bestowed on illegal aliens in specific contexts but not for all claims and not for all civil rights. Ismael Lopez did not develop substantial connections with this country sufficient to give rise to any civil rights under the Fourth Amendment in the context of his circumstances in the United /States. The Fourth Amendment is meant to be a deterrent but so also are the laws of immigration. The Fourth Amendment is not a civil reward for violating the laws of the United States but a right of the polity of American beginning literally with "We, the People" in the Preamble and the Fourth Amendment itself. This Motion to Dismiss for Zachary Durden should be granted in whole or in part for all claims asserted in the Complaint.

Respectfully submitted, this the 14th day of August, 2019.

/s/ *Katherine S. Kerby*
Katherine S. Kerby, MSB # 3584
Attorney for Zachary Durden, Defendant

Of Counsel:
Kerby Law Firm
Post Office Box 551
Columbus, MS 39703
email: ksearcyk@bellsouth.net
fax: 662-328-9553
phone: 662-889-3733

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF

system which sent notification of such filing to all Counsel of record including the following:

Michael Carr, Esq.

Murray B. Wells, Esq.

Aaron A. Neglia, Esq.

SO CERTIFIED, this the 14th day of August, 2019

 s/ *Katherine S. Kerby*
KATHERINE S. KERBY