**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
MISSISSIPPI, OXFORD DIVISION**

**CLAUDIA LINARES as spouse of ISMAEL LOPEZ,
Deceased, and Edward T. Autry as Administrator of
the Estate of Ismael Lopez, Deceased**          **PLAINTIFFS**

**vs.**          **NO. 3:19cv133-NBB-RP**

**CITY OF SOUTHAVEN, STEVE PIRTLE, in his official capacity
as Chief of Police of the Southaven Police Department, OFFICER
SAMUEL MAZE, Individually and in his official capacity as a Southaven
Police Officer, OFFICER ZACHARY DURDEN, Individually and in his
official capacity as a Southaven Police Officer, and JOHN DOES 1-25**    **DEFENDANTS**

---

**BRIEF IN SUPPORT OF DEFENDANT CITY OF SOUTHAVEN'S MOTION TO
DISMISS BASED ON STANDING AND/OR ABSENCE OF JURISDICTION, AND/OR,
IN THE ALTERNATIVE, DISMISSAL BASED ON SOVEREIGN IMMUNITY**

---

### I. Facts and Claims

Claudia Linares as the alleged spouse of Ismael Lopez and Edward T. Autry as the named

Administrator of the Estate of Ismael Lopez filed suit on June 19, 2019 for the death of Ismael

Lopez on July 27, 2017 in Southaven, Mississippi. Plaintiff Linares and Plaintiff Autry claim that

Ismael Lopez died as a result of being shot by one or more City of Southaven police officers who

were on duty and acting within the course and scope of their employment with the City of

Southaven. Former City of Southaven police officers Zachary Durden and Samuel Maze are

named as those police officers. Docket # 1 at first unnumbered paragraph and at ¶¶ 1-5, 8,12,38-

39. The City of Southaven or sometimes hereinafter "City" is sued in for this use of force.

The shooting is alleged to have taken place at the mutual residence of Ismael Lopez and

Plaintiff Linares at 5881 Surrey Lane, Southaven, Mississippi when Ismael Lopez opened the

door to his residence in response to the officers pounding loudly on his front door. Docket # 1

¶¶ 18-25. Ismael Lopez is alleged to have shut the residence door after the dog Coco exited and Coco was shot by Co-Defendant former Officer Samuel Maze. Docket # 1 ¶31, 35. Plaintiffs allege the officers were attempting to apprehend a suspect for domestic assault and went to an incorrect address than the address they were searching for. Docket # 1 ¶¶ 12-21, 25-30. Plaintiffs cite a report from the Mississippi Bureau of Investigation. See certified excerpts of same at Motion Exhibit 1 hereto supported by the affidavit of the custodian of records.

Plaintiffs sue asserting at paragraph IV "Civil Rights Violations by Defendants" arising under the Fourth and Fourteenth Amendments of the "Constitution of the United States" pursuant to 42 U.S.C. § 1983 due to "unlawful seizure" and "excessive force" also characterized as a due process "liberty" deprivation of Ismael Lopez based on the same use of force. Docket # 1 ¶¶54-55, 59-61. There is no allegation of any use of force as to Claudia Linares. Plaintiffs describe these as violations of rights secured by the "Constitution of the United States of America and the Constitution of the State of Mississippi." Docket # 1 ¶¶55-56. No provision of the Mississippi Constitution is identified. Plaintiff Linares asserts that she has a constitutional civil rights claim based on her familial association with Ismael Lopez and the loss to her of the society and companionship of Ismael Lopez arising under the "Fourteenth Amendment to the United States Constitution" due to the use of force by the same officers as to Ismael Lopez. Docket # 1 ¶ 94. This claim is also made pursuant to 42 U.S.C. § 1983. These will be referred to hereinafter sometimes as the Civil Rights claims or the Section 1983 claims.

Plaintiffs then assert at V "Common law claims" described as "wrongful death" as contemplated by "Mississippi statutory and case law." Docket # 1 ¶ 97. The common law torts named include "intentional acts" and "acts of negligence" as well as "willful and wanton conduct." Docket # 1 ¶ 97. Additional torts named are "negligent and/or intentional infliction of

emotional distress." Docket # 1 ¶ 99. These will be referred to also as the state law claims.

Damages sought include for physical injuries to Ismael Lopez, physical pain and suffering of Ismael Lopez, and the "pecuniary value of the life" of Ismael Lopez. Additional damages sought include medical and funeral expenses and punitive damages. Docket # 1 ¶¶ 101-103. Plaintiffs seek "injunctive and/or declaratory" relief. Docket # 1 ¶ 101(I).

Exhibit 1 hereto evidences the currently discovered history of Ismael Lopez contained in the Mississippi Bureau of Investigation Report or MBI Report. Exhibit 1 evidences that at the time of his death that Ismael Lopez was a citizen of Mexico. Motion Exhibit 1 at document pp. 39-40. He was a state and federal fugitive from justice due to multiple prior orders of deportation as an illegal alien and excludable alien and due to a conviction for a violent felony in Washington State with a related parole or probation sentence which he seemingly violated. See Motion Exhibit 1 pp. 6, 8, 11-18 for felony conviction in the State of Washington of "assault -2 domestic violence" with status guilty and well as guilty for driving under the influence. Exhibit1 p. 16 reflects an arrest on August 31, 2001 by I.N.S. on charges of illegal entry into the United States and excludable alien with disposition on October 30, 2001 of "deported to Mexico." Lopez was arrested by ICE /ERO Memphis on March 3, 2013 for charges of illegal re-entry into the United States and alien removal under Section 212 and 237 with disposition "deported to Mexico" on April 2, 2013. Exhibit 1 p. 16. Ismael Lopez was arrested three days after his second documented deportation on April 5, 2013 by Border Patrol in "Sector Laredo" and charged with illegal entry and alien inadmissibility under Section 212. This resulted in reinstatement of a prior deportation order. Three known deportation orders for Ismael Lopez were in force at the time of his death on American soil in Southaven, Mississippi. On information, Plaintiff Linares is also illegally present in the United States, has and had no documentation at any relevant times showing her

right to be on American soil, and was encouraging and facilitating Ismael Lopez as an illegal alien in remaining in the United States. On information, Plaintiff Linares, during various times of in-custody questioning indicated she was married to two men at the same time.

Motion Exhibit 1 reflects records from the City of Horn Lake, Mississippi on the arrest of Ismael Rodriguez Lopez when he released his truck to "my mother, Maria Martinez" on 3/6/2013. Both he and "Maria Martinez" signed the top page. Exhibit 1 pp. 35-36. These certified government documents evidence a vehicle release by Ismael Rodriguz Lopez to who he claimed as his mother Maria Martinez after his arrest on March 5, 2013 in Horn Lake, Mississippi on charges of improper tag-altered, suspended driver's license, and vehicle insurance law violations on March 13, 2013.

Exhibit 2 attached hereto and filed in support of this Motion is a certified copy of the entire court file from DeSoto County Chancery Court cause # 18-cv-505 which is the estate court matter from which Plaintiff Autry claims his standing. This reflects the source of Plaintiff's possession of the records attached in Exhibit 1 as the District Attorney for the state entity Judicial District who produced the records to Plaintiff Autry by virtue of a court order. Motion Exhibit 2 at p. 64-65.

Motion Exhibit 2 documents apparent conflicting but sworn statements reflected in said court file of Plaintiff Linares and others relative to lack of standing as well support her suspect credibility. See Motion Exhibit 2 p. 47 and 55 which is a birth certificate from Mexico for the birth of "Rodolfo Avendano Linares" on a specific date in 1995 in Mexico with mother named "Claudia Linares Gonzalez" and father named "Reymundo Avendano Tolentino." Contrast this document with affidavits of "Claudia Linares-Gonzalez" at Exhibit 2 p. 7 and "Rodolfo Linares" at Exhibit 2 p. 6 signed on March 13, 2018 before the petition sworn to by said affidavits was

filed. Both "Claudia Linares- Gonzalez" and "Rodolfo Linares" swear that the "matters and facts" in the Petition filed later on March 22, 2018 are "true and correct as therein stated." The Petition at Exhibit 2 pp. 3-5 contains at paragraph 3 the names and relationships of purported heirs to decedent Ismael Lopez. This includes as sworn to "Claudia Linares Gonzalez" as "adult" with no date of birth given and relationship of "Wife" and "Rodolfo Linares" as "adult" with no date of birth given and relationship of "son" and "Angel Linares" as "adult" with no date of birth given and relationship of "son." No service or process or waiver of process or any form of notice to Angel Linares appears in the court file. The apparent motherly report of paternity of Plaintiff Linares to the Mexican authorities at the time of Rodolfo's birth conflicts with what she and Rodolfo reported on March 13, 2018 when they signed the estate affidavits as to Rodolfo's paternity. It is also possible that Plaintiff Linares falsely reported paternity to Rodolfo resulting in his estate affidavit being a misrepresentation to the Court but not potential perjury. Plaintiff Linares appears to have falsely represented to at least one set of government authorities.

The conflicting representations of the affiants in the Estate file with the birth certificate, the swearing out of waivers to service of process to a petition that had not even been filed with the Chancery Court, and the failure to obtain a waiver of process or joinder from Angel void the appointment of Plaintiff Autry and/or render his standing suspect and without legal force.

Motion Exhibit 3 reflects certified records from the municipal court of Horn Lake, Mississippi supported by an affidavit of custodian of records. These include multiple citations or arrests of Ismael Rodriguez Lopez. His arrest on March 5, 2013 in Horn Lake, Mississippi was on charges of improper tag-altered, suspended driver's license, and vehicle insurance law violations. See Exhibit 3 pp. 14-19 and status as "prisoner." His trial set for March 13, 2013 matches the date of Exhibit 1 above when Lopez was arrested by ICE /ERO Memphis on March

13, 2013 for charges of illegal re-entry into the United States and alien removal under Section 212 and 237 with disposition "deported to Mexico" on April 2, 2013. A traffic stop in Horn Lake, Mississippi on March 5, 2013 by a local City of Horn Lake police officer about a mile from where Ismael Lopez was residing on July 27, 2017 at 5881 Surrey Lane in Southaven, Mississippi lead to another felony conviction for Ismael Lopez and his soon after deportation to Mexico.

Motion Exhibit 4 reflects a Go Fund Me campaign benefit for Ismael Lopez with benefits of "All proceeds go to Jordan Castillo and Family for funeral expenses" with the comment that the parents of Ismael Lopez Rodriguz include his father "Mr. Joel Lopez" and his mother "Concepcion Rodriguez." There is no mention of the person Ismael Lopez declared his mother "Maria Martinez." It appears that multiple purported mothers and multiple purported fathers as well as multiple but simultaneous claimed marriages were customs surrounding not only Ismael Lopez but also Plaintiff Linares.

Exhibit 5 hereto are records signed by both Rodolfo Linares and officials of the Southaven Police Department for release of a gun with ammunition back to the possession of Rodolfo Linares on April 24, 2015 with the supporting affidavit of a custodian of records. The gun purchaser/owner is reflected as Claudia Linares. Motion Exhibit 5 reflects the driver's license learner's permit of Rodolfo Linares and his specific date of birth in 1995. This date of birth was omitted from the estate petition but is an exact match to the birth certificate at Motion Exhibit 2 at pp. 47 and 55. The names on the driver permit and the birth certificate are also an exact match with each reflecting the name "Rodolfo Avendano Linares." The full name of "Rodolfo Avendano Linares" appears in numerous citations issued to him by the City of Horn Lake, Mississippi in Motion Exhibit 3 at pp. 20-48. Rodolfo was too young to supply the vital statistics for the Mexican birth certificate yet the matches with the Mississippi issued driver's

permit and the Horn Lake records are clear corroborations of veracity of the birth certificate.

Defendant City asserts with credible documentary support that Plaintiff Linares was not legally married to Ismael Lopez, that Plaintiff Linares has no standing to sue, no standing exists for the claims related to Ismael Lopez, that Plaintiff Autry was not properly appointed as Administrator, and/or that Administrator Autry was appointed Administrator by virtue of apparent conflicting sworn affidavits and/or material misrepresentations and/or contrary to the requirements of law thereby voiding his appointment ab initio. Neither Plaintiff has standing. All state law claims are barred by sovereign immunity as applied by and retained by the Mississippi Tort Claims Act including but not limited to lack of any presuit tort notice and/or statutes of limitations. The persons claimed as related to Ismael Lopez in the estate proceeding seemingly were not related by law including by the laws of the State of Mississippi or any other applicable laws. Relationships not carrying the dignity of being legally sanctioned or legally protected provide no heirship rights in Mississippi. They also do not serve as civil rights predicates under the Fourth or Fourteenth Amendments of the United States Constitution.

## 2. Standard

This Motion is brought under both Rule 12(b)(1) for lack of jurisdiction and/or lack of standing and/or 12(b)(6) for lack of standing, and/or based on the applicable time bar due to the expiration of the statutes of limitations on the state claims. The jurisdictional issue of standing is a legal question. Motions filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenge the district court's subject matter jurisdiction to hear a case. *Ramming v. U. S.,* 281 F. 3d 158, 161 (5th Cir. 2001). If a Rule 12 (b)(1) motion is filed simultaneously with other motions under Rule 12, the court should consider the Rule 12 (b)(1) jurisdictional defect prior to ruling on any attack on the merits. *Id.* As the party asserting jurisdiction, the "plaintiff constantly bears the burden

of proof that jurisdiction does in fact exist." *Id. Gunter v. Bryant*, 2018 WL 3650244, *1 (N. D. Miss. Aug. 1, 2018). In determining whether the Trial Court has subject matter jurisdiction, the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the records; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Crane v. Johnson*, 783 F. 3d 244, (¶¶ 3-6) (5th Cir. 2015). In accord see *Campaign for Southern Equality v. Mississippi Department of Human Services*, 175 F. Supp. 3d 691, *698 (¶¶1-3) (S.D. Miss 2016).

"Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because if fails to state a legally cognizable claim." *Id.* Fed. R. Civ. P. 12(b)(6). "The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief." *In re McCoy*, 666 F. 3d 924, 926 (5th Cir. 2012). Matters of public record may be referred to and relied upon. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498-99 (5th Cir. 2000). The Court may take "judicial notice of documents in the public record., and may consider such documents in determining a motion to dismiss." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005).

A Complaint assessed under Rule 12(b)(6) is assessed under the plausibility standard. "The tenet that a Court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662,129 S. Ct. 1937,1949, 173 L. Ed. 2d 868 (2009). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court will not accept as true "conclusory allegations,

unwarranted factual inferences, or legal conclusions." *Id*. Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc*., 615 F. 3d 412, 417 (5th Cir.2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief...[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. 678. Plaintiffs omitted from the Complaint any reference to the citizenship of either Ismael Lopez or Plaintiff Linares. Plaintiffs omitted from the Complaint any allegations about the paternity or citizenship of Rodolfo. That information may then be derived from the Exhibits while still construing the allegations of the Complaint in favor of Plaintiffs. See Complaint docket #1 at ¶¶ 1-2, 55.

This motion is more than a facial attack but also a factual attack supported by evidence. As a result "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F. 2d 404, 413 (5th Cir. 1981). "A factual attack may occur at any stage of the proceedings." *Saenz v. Transamerica Life Insurance Company*, 2017 WL 635570, *2 (S.D. Tex. Feb. 16, 2017).

Plaintiffs must also have standing for the requested declaratory and/or injunctive relief. To obtain injunctive relief, Plaintiffs must show that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate" and not "conjectural" or "hypothetical." *Clay v. Garth*, 2012 WL 4470289 (N.D. Miss. Sept. 27, 2012)(citing *City of Los Angeles v. Lyons*, 461 U. S. 95, 101-102,(1983)). Plaintiffs herein asked for injunctive and declaratory relief very similar as

was sought and denied due to the absence of any irreparable injury as to future potential conduct in *Clay v. Garth* at *2. See denial of relief in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351(1992) as plaintiffs did not assert sufficiently imminent injury to have standing.  Plaintiffs do not meet the restrictive standing doctrine. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).

### 3.  No Standing

Plaintiffs have no standing. The claim is "speculative" as to whether the injury will be "redressed by a favorable decision" as the Plaintiffs lack any form of standing due to the absence of any legally recognized relationship to support standing. *Lujan v. Defenders of Wildlife*, et al, 112 S. Ct. 2130, *569(¶¶3-4)(1992). Absent a legally recognized relationship relationship then neither Plaintiff has standing. Common law marriage does not exist in Mississippi. The requirements of marriage are statutory. See Miss. Code Ann § 93-1-15. Cohabitation is not marriage and no right to sue as alleged in this matter exists. "The legislature has neither condoned cohabitation nor extended the rights enjoyed by married individuals to those who merely cohabit." *Davis v. Davis*, 643 So. 2d 931, ¶ 4 (Miss. 1994). On information, Plaintiff Linares has no standing due to her status as a common law wife, or as a live in girlfriend, or as a person with two husbands, or due to bigamy, or as a result of a series of religious or social event ceremonies relative to the theme of marriage not sanctioned by applicable civil law or due to vital statistic misrepresentations. Plaintiff Linares and Ismael Lopez were not legally married to each other and/or Ismael Lopez was not the father of those so claiming in the Estate of Ismael Lopez. The records reflect the issue of the Ismael Lopez and Claudia Linares each having using multiple varied spellings of their various names and  alias names. See Motion Exhibit 1 at pp. 13, 20, 26 for about eight alias names of Ismael Lopez and two for Claudia Linares.

Standing is a "threshold matter of jurisdiction." *Cole v. General Motors Corp*., 484 F. 3d 717, 721 (5th Cir. 2007), that may be raised by the court at any time. *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F. 2d 345, 348 (5th Cir. 1989). The court must inquire "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Clay v. Garth*, 2012 WL 4470289 (N.D. Miss. Sept. 27, 2012)(citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

For the exercise of federal jurisdiction to be proper, the party seeking to invoke federal jurisdiction must have constitutional standing under Article III of the United States Constitution. *Bond v. United States*, 564 U.S. 211, 217, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011;. *Crane v. Johnson*, 783 F. 3d 244 (5th Cir. 2015); *Choice Inc. v. Greenstein*, 691 F. 3d 710, 714(5th Cir. 2012). The party seeking to invoke federal jurisdiction has the burden of establishing standing. *Osterweil v. Edmonson*, 424 Fed. Appx. 342, 343 (5th Cir. 2011)(per curiam)(citing *United States v. Hays*, 515 U.S. 737, 743, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995)). Claudia Linares, Ismael Lopez, and those claiming through either are not "other persons" with any right to sue under 42 U.S.C. § 1983. Claudia Linares and Ismael Lopez do and did not have the same rights as legal or resident aliens. See *Yick Wo v. Hopkins*, 118 U.S. 356,6 S. Ct. 1064, 30 L.Ed. 220 (1886) providing Fourteenth Amendment protection to two alien subjects of the nation of China living and working in the United States as "other persons" which persons were Yick Wo and Wo Lee lawfully in the United States by virtue of a treaty with the Emperor of China.

To establish standing, a plaintiff must have suffered an injury in fact-an invasion of "a legally protected interest" which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Harvey v. Caesars Entertainment Operating Co., Inc*.55 F. Supp. 3d 901, ¶9 (N.D. Miss. Sept. 24, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130,

119 L. Ed. 2d 351(1992)). Plaintiffs have the burden of establishing standing and must demonstrate they have suffered "an invasion of a legally protected interest." *Raines v. Byrd*, 521 U.S. 811, 818-819, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997).

Neither Plaintiff in this case has Article III standing or statutory standing. The Article III standing issue relates to the absence of Fourth and Fourteenth Amendment civil rights of Ismael Lopez or of Claudia Lianres or derivatives of same for Plaintiff Autry and so absent for those who now seek to stand in place for Ismael Lopez. Plaintiff Linares is also in the United States in violation of United State law and as a result of her status as an illegal alien in American soil has very limited federal civil rights and no federal Fourth or Fourteenth Amendment civil rights as alleged. In addition and absent a valid marriage to Ismael Lopez or some other legally protected interest then she has no standing and no right to relief. *Rhyne v. Henderson County*, 973 F. 2d 386, 390 (5th Cir. 1992).

Ismael Lopez was present in the United States at the time of his death as an illegal alien on American soil. That is the beginning point for analysis. In addition, Ismael Lopez was present in the United States at the time of his death by virtue of his then being in violation of federal law and in violation of multiple court orders prohibiting his entry in the United States. These are distinctive and compelling circumstances as to all claims arising from the complained of use of force as to Ismael Lopez in an area of law on immigration in which Congress has been full throated and vociferous. Any Fourth Amendment civil rights that Ismael Lopez even arguably could have gained upon entry to the United States never came to fruition or were lost by virtue of his own acts and omissions. Motion Exhibit 1 supports a long term record of his criminal conduct and illegal entries. Any contacts that could have grown into positive legal contacts were negated by his demonstrated habitual contempt of the laws and court orders of the United States. Ismael Lopez had insufficient connections with the United States of the type, dignity, and caliber required to attain standing for

Fourth or Fourteenth Amendment protection. Ismael Lopez was a convicted felon for a crime of violence while in the United States and fugitive from justice in violation of his terms of probation with an outstanding warrant for deportation as well as being a felon in possession and an illegal alien in possession of a firearm at the time he opened his door to the knock of the described Southaven police officers.

The civil rights of Ismael Lopez relative to use of force, if they existed, were subsumed by congressional action into the immigration laws. See example in *De La Paz v. Coy*, 786 F. 3d 367 (2015). This is evidenced by the code sections Ismael Lopez was charged with shown in Motion Exhibit 1. If he ever had Fourth Amendment or Fourteenth Amendment civil rights, they were lost by his own conduct and misconduct. Ismael Lopez may have been a person on American soil but he was not one of the "We, the People of the United States" entitled to the civil rights invoked in this lawsuit. The Fourth Amendment explicitly states that it's coverage extends to the "right of the people." This refers to members of the polity of the United States.

Plaintiff Claudia Linares is also an illegal alien on American soil who harbored a convicted felon fugitive and who was in possession of a firearm. Plaintiff Linares remains apparently present in the United States without permission and in violation of the laws of the United States. There is no Article III standing for any of the federal civil rights she claims plus the claimed federal familial claims of Plaintiff Linares do not exist as a matter of law. Plaintiff Linares and Ismael Lopez were not legally husband and wife under the laws of the State of Mississippi or any applicable law. *Rhyne v. Henderson County*, 973 F. 2d 386, 390 (5th Cir. 1992).

"Statutory standing is not indicative of Article III jurisdictional standing." *Camsoft Data Sys., Inc. v S. Elecs. Supply, Inc*., 756 F. 3d 327, 332 (5th Cir. 2014). "If a plaintiff does not have statutory standing, he lacks a cause of action, and the actions should be dismissed under F. R. Civ. P. 12

(b)(6)." *Walker v. New Orleans City, La.*, No. 16-31229, 2017 WL 3467879, at *1 (5ᵗʰ Cir. Aug. 11, 2017)(per curiam)(citing *Malvino v. De Iluniversita*, 840 F. 3d 223, 229-30 (5ᵗʰ Cir. 2016); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F. 3d 787, 795 n. 2 (5ᵗʰ Cir. 2011). A lack of constitutional standing should be granted under F. R. Civ. P. 12(b)(1). *Royal v. Boykin*, 2017 WL 3897168, *2(N.D. Miss. Sept. 6, 2017).

In order to have statutory standing to bring a section 1983 claim on behalf of another, a plaintiff must have standing under the state wrongful death or survival statutes. *Pluet v. Frasier*, 355 F. 3d 381, 383 (5ᵗʰ Cir. 2004). See also *Rodgers v. Lancaster Police & Fire Dep't*, 819 F. 3d 205, 208-09 (5ᵗʰ Cir.), *cert. denied*, 137 S. Ct. 304, 196 L. Ed. 2d 223(2016), *reh'g denied*, 137 S. Ct. 545, 196 L. Ed. 2d 440 (2016). Standing to bring a section 1983 claim "is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in [Section 1983's] administration. *Walker*, 2017 WL 3467879, at *1.

Mississippi licensing laws on marriage provide mandatory requirements to achieve the legally protected status of married persons necessary for standing to sue as a widow or statutory heir of a deceased person. *Gunter v. Bryant*, 2018 WL 3650244 (N. D. Miss. Aug. 1, 2018). Absent Plaintiff Linares being legally married to Ismael Lopez at the time of his death then Plaintiff Linares has no statutory standing. The legal relationship of marriage is also required for relief sought by Plaintiffs as a "legally protected interest" is a requirement of jurisdictional standing. *Gunter v. Bryant*, 2018 WL 3650244, *2 (N. D. Miss. Aug. 1, 2018)( quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351(1992)).

**A. There is no legally recognized relationship that supports any Federal Civil Rights Claims**

Plaintiffs name the Fourteenth and Fourth Amendment as the predicates for their section 1983 claims. The type of claims asserted are use of force related and so are analyzed under only the Fourth

Amendment. "In *Graham v. Conner*, the Supreme Court rejected the notion that excessive force claims were governed by a generic 'substantive due process' standard employed by many federal courts. 490 U.S. at 393. The Court held that '*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.' *Id* at 395 (emphasis in original) (quoting and explaining *Garner*, 471 U.S. at 7-8). The Court reasoned that 'because the Fourth Amendment provides an explicit textural source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' *Id.* (citations omitted); accord *Martinez-Aguero v. Gonzalez,* 459 F.3d 618, 624 (5th Cir. 2006)." *Mendez v. Poitevent*, 2014 WL 12639318, *12 (W.D. Tex. Sept. 30, 2014)(quoting and citing *Graham v.* Conner, 490 U. S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) and *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

The Fourth Amendment provides,"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend, IV. In *United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990), the Supreme Court addressed the question of the Fourth Amendment's extraterritorial reach. The claim surrounded a warrantless search of premises of a Mexican national in Mexico by United States DEA Agents authorized by Mexican officials and was reviewed under a Fourth Amendment suppression motion. On appeal the U.S. Supreme Court began it's review of the Circuit Court opinion by focusing on the text of the Fourth Amendment. The Court noted that the Fourth Amendment "extends its reach only to 'the people,'" which "seems to have been a term of art employed in select parts of the Constitution," including the "Preamble, Article I, and the First,

Second, Fourth, Ninth, and Tenth Amendments." *Id.* at 265, 110 S. Ct. 1056. The Court found this "textural exegesis" to suggest that "the people" in the Constitution "refers to a class of persons who are part of the national community or who have otherwise developed sufficient connection with this country to be considered a part of that community." *Id*. The Court then examined the history of the drafting of the Fourth Amendment and concluded that "the available historical data shows...that the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory." *Id.* at 266, 110 S. Ct. 1056. The Supreme Court distinguished cases that claimant Verdugo-Urquidez relied on for the suppression request noting that those cases "established only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id*. at 271, 110 S. Ct. 1056. The Court criticized and rejected the Court of Appeals ruling that had applied a global application of the Fourth Amendment. The Court then concluded that the "Fourth Amendment has no application." *Id*. at 274-75, 110 S. Ct. 1056.

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990), clarified the Fourth Amendment's application to illegal aliens by use of the sufficient connections test and its related interpretation of the Fourth Amendment text. *District of Columbia v. Heller*, 554 U.S. 570, 580 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) favorably cited *Verdugo-Urquidez*'s definition of "the people" and again stated the test is that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."

The current law is that Ismael Lopez had arguable Fourth Amendment civil rights only when

he came within the territory of the United States and developed voluntary substantial connections with this country. Ismael Lopez never established voluntary substantial connections with this country as shown by Motion Exhibit 1 and there is no constitutional claim. The application of the sufficient connections requirement of *Verdugo-Urquidez* relied on more than just the text of the Fourth Amendment as the opinion cites the history of the Fourth Amendment at 266, 110 S. Ct. 1056, prior precedent at 268-73, 110 S. Ct. 1056, and practical consequences at 273-75, 110 S. Ct. 1056.

Aliens in the United States may acquire Fourth Amendment protection. See for example *Martinez-Aguero v. Gonzalez*, 459 F. 3d 618, 625 (5th Cir. 2006) holding that an alien's regular and lawful entry of the United States pursuant to a valid border-crossing card, reentry based on verbal statements by an American official, and acquiescence in the U.S. system of immigration constituted voluntary acceptance of societal obligations rising to the level of "substantial connections" sufficient to invoke the Fourth Amendment. In contrast the status of Ismael Lopez was more like that of a deported alien standing at the border of the United States and Mexico but still in Mexico as he had no permission to enter and multiple Court orders that barred entry. See for example the discussion of the crimes prosecuted against an illegal alien for illegally entering the United States after having been previously deported in *Santacruz-Ramirez v. United States,* 2016 WL 8218236 (S.D. Texas 12/29/2016). Any criminal use of force on Ismael Lopez was prohibited by criminal laws but that issue was answered as alleged by Plaintiff in the Complaint when a Grand Jury elected not to indict any person for the subject use of force event.

The conclusion that no blanket Fourth Amendment rights exist for "undocumented aliens" is compelling. See refusal to extend Fourth Amendment protection in *De La Paz v. Coy*, 786 F. 3d 367 (2015). Relief for civil rights violations was noted available only in the context of the INA. See the definition of "the people" in the context of the Second Amendment holding that an illegal alien

in the United States has no Second Amendment Constitutional right. *United States v. Portillo-Munoz*, 643 F. 3d 437, 440 (5th Cir. 2011). The Fifth Circuit clearly stated in *United States v. Portillo-Munoz*, 643 F. 3d 437, at 440 that "Portillo relies on *Verdugo-Urquidez* and argues that he has sufficient connections with the United States to be included in this definition of "the people," but neither this court nor the Supreme Court has held that the Fourth Amendment extends to a native and citizen of another nation who entered and remained in the United States illegally." Lawfully admitted aliens are "other persons" for purposes of 42 U.S.C. § 1983. *Graham v. Richardson*, 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971). No such blanket right exists for the claims in the Complaint. Neither Linares nor Lopez are or were one of "the people" within Fourth Amendment purview.

In similar manner there is no constitutional protection for Claudia Linares due to her status as an illegal alien on American soil as well as no constitutional protection for her familial claims asserted for herself absent a legally valid marriage to Ismael Lopez as of the time of his death. *Stevens v. Holder*, 966 F. Supp. 2d 622 (E.D. Va. 2013); *Plummer* v. *Town of Somerset*, 601 F. Supp. 2d, 358, 366 (D. Mass. 2009). The constitutional rights she seeks relief under are barred based on her status under Mississippi civil law. *Walker v. Henderson*, 239 F. 3d 366, 390 (5th Cir. 2000).

The status of Claudia Linares and Ismael Lpoez as illegal aliens is distinguishing from case law recognizing the rights of resident aliens. Resident aliens are persons in the United States that were lawfully admitted. See discussion of civil rights of a German national who was a "legal permanent resident" of the United States in *Messmer v. Harrison*, 2015 WL 1885082, *1 (E. D. N. Carolina April 24, 2015) noting that resident aliens have Fifth Amendment rights, First Amendment rights, and Fourteenth Amendment rights despite not being American citizens. In contrast see criminal prosecution of citizen for harboring or encouraging an illegal alien to reside in the United States in violation of 8 U.S.C. § 1324 (a)(1)(A)(iv) in *United States v. Anderton*, 901 F. 3d 278

(2018). The noted statute criminalizes encouraging illegal aliens to reside in the United States. The history Plaintiff Linares alleges in the Complaint relative to Ismael Lopez as a predicate for her right to sue appears to have been more in the nature of a continuing violation of the cited federal law.

### B. Estate Irregularities

The appointment of Plaintiff Autry is voided by either misrepresentations or by errors in the appointment process or by both. The waivers for service of process were signed at a time when no petition had been filed. Those are invalid waivers. No process was served on stated son "Angel" and no waiver was obtained from Angel. Heirship has not been determined. See Miss. Code Ann. § 91-1-27 - 29. The named son Rodolfo signed an affidavit of his paternity in direct conflict with his birth certificate. Two persons claimed of sufficient family connection to Ismael Lopez for purposes of opening the Estate apparently were not relatives by law. Plaintiff Linares signed an affidavit in the Estate in direct conflict with her son Rodolfo's birth certificate. Rodolfo has no claim as he failed to pursue a timely adjudication required by Miss. Code Ann. § 91-1-15. Absent proof of his formal adoption by Ismael Lopez or a valid birth certificate reflecting Ismael Lopez then he is not an heir.

Mississippi law determines whether either Plaintiffs have standing as to heir status and inheritance rights. *Dalton v. McLarty*, 2016 WL 2968556 (N.D. Miss 2016). See decedent's grandfather without standing as statute does not list grandfather and due to errors in setting up estate administrator in *Burley v. Douglas*, 26 So. 3d 1013, ¶¶ 4-11 (Miss. Ct App. 2010). Mississippi's wrongful death statute at Miss. Code Ann. § 11-7-13 controls. *Pioneer Cmty. Hosp. of Newton v. Roberts*, 214 So. 3d 259, 259-60 (Miss. 2017). The statute provides "when the death of any person ...shall be caused by any real, wrongful, or negligent act or omission,...if death had not ensued , have entitled the injured party ...to maintain an action and recover damages in respect thereof." The statute states in pertinent part that "an action for such damages may be brought in the name of the personal

representative of the deceased person...for the benefit of all persons entitled under the law to recover, or by a widow for the death of her husband...or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned...The list of persons in this section who may bring a wrongful death action is exclusive and only those persons shall be considered interested parties who are entitled to bring an action under this section." In accord *Long v. McKinney*, 897 So. 2d 160, 168 (Miss. 2004).

*Burley v. Douglas*, 26 So. 3d 1013, ¶¶ 4-11 (Miss. Ct App. 2010) discussed the issues of appointment of an administrator by the Chancery Court whose edicts were rendered without power to properly act due to misrepresentations to the Court. *Id*. at n. 14 (citing *Delta Health Group, Inc. v. Estate of Pope*, 995 So. 2d 123 (Miss. 2002)). In *Pope* the Court was submitted a petition for appointment wherein the petitioner "falsely testified that he was the nephew"of the decedent. Later testimony proved that the petitioner was the great-nephew of the decedent and so this was a misrepresentation of significance. Plaintiff Linares appears to have misrepresented to the Chancery Court of DeSoto County a legal relationship of Ismael Lopez thereby rendering void or voidable the appointment of Plaintiff Autry. Her apparently conflicting testimony to officials in Mexico and in the United States as to the parentage of her child Rodolfo, who bears her surname but bears no name the same as Ismael Lopez, supports the wisdom of and fairness of immediately requiring, at minimum, proper documentation to support Plaintiffs'standing such the Ismael Lopez and Claudia Linares immigration records inclusive of her and his custodial interrogation and court hearing transcripts, all of her marriages, her divorces, birth certificates, and the official records of the purported marriages and/or divorces to Ismael Lopez, the father on the birth certificate of Rodolfo named Reymundo Avendano Tolentino, and any other spouses. Her testimony is compromised by a cloud of misrepresentation and an apparent pattern of deceit. Fraud vitiates. The attached exhibits

cast her credibility into significant doubt. Credible documentary evidence should be produced before she or Plaintiff Autry may proceed. Her representations of marriage and parentage to the DeSoto County Chancery Court do not seem based on truth. Mexican family customs do not constitute American legal compliance. See for example first line statutory group of beneficiaries held nonexistent as decedent "Walter never married " in *Jaquith Nursing Home v. Yarbrough,* 99 So. 3d 745, ¶¶ 13-14 (Miss. 2012). Legal marriage is a prerequisite to standing for both Plaintiffs.

Mississippi's survival statute of Miss. Code Ann. § 91-7-233 provides that an administrator may commence any personal action "which the testator or intestate might have commenced and prosecuted." The survival statue allows only the personal representative to bring suit. See *Clark Sand Co. v. Kelly*, 60 So. 3d 149, 154 (Miss. 2011); *Stone Inv. Co. v. Estate of Robinson*, 82 So. 3d 631, 641 (Miss. Ct. App. 2011). The same issues discussed above for the state law claims as well as for the Section 1983 claims apply to all claims under this survival statute.

### C. Statutory Irregularities

The wrongful death action is not part of the estate of the deceased. *Partyka v. Yazoo Development Corp*., 376 So. 2d 646, 650 (Miss. 1979). Only those individuals listed in the wrongful death statute may bring this independent cause of action. *Partyka*, 376 So. 2d at 650 (citing *Hasson Grocery Co. v. Cook*, 196 Miss. 452, 459, 17 So. 2d 791 (1944)). Wrongful death claimant status based on "heir-at-law" is not the same as a wrongful death beneficiary. The statute lists beneficiaries categorically. Edward T. Autry claims as Administrator of the Estate of Ismael Lopez, deceased. He is not a beneficiary but an appointee. *Burley v. Douglas*, 26 So. 3d 1013, 1021-1023 (Miss. 2009). *Estate of Smith v. Smith*, 130 So. 3d 508, ¶ 18 (Miss. 2014). Absent verified marriage and divorce documents from her other purported husband then Plaintiff Linares cannot establish statutory standing. Plaintiff Linares has doubtful credibility and has no standing due to mere romantic affinity.

The Mississippi Wrongful Death statute of Miss. Code Ann. § 11-7-13 provides at the second to last paragraph of same that "the list of persons in this section who may bring a wrongful death action is exclusive and only those persons shall be considered interested parties who are entitled to bring an action under this section." *Long v. McKinney*, 897 So. 2d 160, 168(¶ 28) (Miss. 2004). "These statutory provisions have been interpreted to allow a suit by the personal representative, or by the wrongful death heirs, but not by both." *Jones v. Steiner*, 481 F. 2d 392 (5th Cir. 1973). *Long v. McKinney*, 897 So. 2d 160, 168(¶ 29) (Miss. 2004). The wrongful death heirs of Ismael Lopez have not been adjudicated. Motion Exhibit 2. The statute has generally been interpreted to provide exclusive authority to a wrongful death beneficiary who files suit to pursue the claims of the estate. *Hornburger v. Baird*, 508 F. Supp. 84 (N.D. Miss. 1980).

The Mississippi Wrongful Death statute of Miss. Code Ann. § 11-7-13 was amended in 1981 to allow illegitimate children to inherit for the first time in Mississippi from their biological parents. The relevant section of the statute now reads "The provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15." Remedy is defined at Miss. Code Ann. § 91-1-15 (1)(a) as "the right of an illegitimate to commence and maintain a judicial proceeding to enforce a claim to inherit property from the estate of the natural mother or father of such illegitimate, said claim having been heretofore prohibited by law." Miss. Code Ann. § 91-1-15 (1) ( c ) defines "illegitimate" which means a person who at the time of his birth was born to natural parents not married to each other. Plaintiffs have not complied with the requirements of this law for two purported heirs and claimed sons of Ismael Lopez. The name of Ismael Lopez does not appear on the birth certificates

of Rodolfo and any birth certificate for Angel has not yet been located. If Ismael Lopez was the biological father of either while Plaintiff Linares was married to another person or was the father without legal marriage to the mother or if Plaintiff Linares falsely stated as to paternity on the birth certificate, then the opportunity provided by law to amend said birth certificate has lapsed. Miss. Code Ann. § 91-1-15 (3) created the right of an illegitimate to inherit from a natural father if the statute was timely followed. It was not.

There is a one year time from date of death time bar for the illegitimate heirship determination if filed in the Courts of Mississippi. There is a 90 day period of limitations from date of decedent's death if the procedure is handled in an out of Mississippi court. *Estate of McCullogh v. Yates*, 32 So. 2d 403, ¶ 24(Miss. 2010); *In re Estate of Davidson*, 794 So.2d 261, 266 (Miss. Ct. App. 2001)."Under Mississippi law, failure to bring a timely paternity claim bars the nonmarital child's right to inherit as an heir under our statute." *Estate of Elmore v. Williams*, 150 So. 3d 700, *701 (¶ 6) (Miss. 2014)*. If Rodolfo or Angel are biological children of Ismael Lopez then his or their claims are time barred to have amended birth certificates. See also *Prout v. Williams,* 55 So. 3d 195, ¶ 4 (Miss. Ct App. 2011). Rodolfo's representation to the Chancery Court of DeSoto County, Mississippi that he was a son of Ismael Lopez was relied on to open the Estate in which Plaintiff Autry was appointed Administrator. This is the type of misrepresentation that voids the appointment of Plaintiff Autry. *Delta Health Group, Inc. v. Estate of Pope*, 995 So. 2d 123 (Miss. 2002).

### 5. State Law Claims: Mississippi Tort Claims Act

All state law claims are subject to the Mississippi Tort Claims Act (MTCA) found at Miss. Code Ann. § 11-46-1, et seq. MTCA coverage extends to the State of Mississippi or a political subdivision of the state including persons acting on behalf of the political subdivision in any official capacity. Miss. Code Ann. § 11-46-1 (h) defines "Injury" as death, injury to a person, damage to or

loss of property or any other injury that a person may suffer that is actionable at law or in equity."
Miss. Code Ann. § 11-46-1 (i) states "political subdivision" means any body politic or body
corporate other than the state responsible for governmental activities only in geographic areas
smaller than that of the state, including, but not limited to any county, municipality." Miss. Code
Ann. § 11-46-1 (k) states "Law" means all species of law, including but not limited to, any and all
constitutions, statutes, case law, common law, customary law, court order, court rule, court decision,
court opinion, court judgment or mandate, administrative rule or regulation, executive order, or
principle or rule of equity."

Miss.Code Ann.§ 11-46-7(1) provides "The remedy provided by this chapter against a
governmental entity or its employee is exclusive of any other civil action or civil proceeding by
reason of the same subject matter against the governmental entity or its employee or the estate of the
employee for the act or omission which gave rise to the claim or suit; and any claim made or suit
filed against a governmental entity or its employee to recover damages for any injury for which
immunity has been waived under this chapter shall be brought only under the provisions of this
chapter, notwithstanding the provisions of any other law to the contrary." All state law claims
attempted in this cause are controlled by the Mississippi Tort Claims Act. See Plaintiff's allegations
that all actions of City officers were within the course and scope of employment with the City of
Southaven, Mississippi. Complaint docket #1 at 8. All state law claims are barred by the one year
statute of limitation and by Plaintiffs' failure to give the mandatory presuit tort notice.

The Mississippi Tort Claims Act requires that before any lawsuit is filed that the claimant
give a presuit tort notice. Neither Plaintiff complied with Miss. Code Ann. § 11-46-11 including (1)
thereof requiring a 90 day presuit statutory compliant tort notice before filing suit. As a result all

state law claims are barred for failure to comply with the pre suit requirements of the MTCA. *University of Mississippi Medical Center v. Easterling*, 928 So. 2d 815 (Miss. 2006) held the ninety day notice rule is "a hard-edged, mandatory rule which is"..."strictly enforced."

"The Mississippi Tort Claims Act (MTCA) imposes stringent requirements on persons wishing to sue state agencies, subdivisions, and employees. See *Little v. Mississippi Dep't. of Human Servs.,* 835 So. 2d 9, 12 (Miss. 2002). One of those requirements instructs the prospective plaintiff to serve a detailed Notice of Claim upon a specific government official. See Miss. Code Ann. § 11-46-11. If the prospective plaintiff wants to sue a county, for example, she must send her Notice of Claim to the Chancery Clerk of that county. *Id.* § 11-46-11(2)(a)(i)(1). Here, Davis served a Notice of Claim upon the Hinds County Board of Supervisors and the Sheriff's Department. (Docket citation omitted).That was incorrect. Mississippi law required her to serve the Chancery Clerk. Because Davis did not serve the correct official, all of her claims brought pursuant to the MTCA must be dismissed." *Davis v. Hinds County, Mississippi, et al,* 2016 WL 2994097, *2, ¶ 12.(applying Mississippi law). In accord Miss. Code Ann. § 11-46-11(1)-(2). See also *Jones v. City of West Point, Miss*., 2015 WL 5227604, *1, *2 (N. D. Miss. Sept. 8, 2015). In *Jones* the plaintiff "argues briefly" that the City did have actual notice and references in support a letter attached to the Complaint from a third party. The Court held that "actual notice"..."does not cure otherwise defective notice." All state law claims are barred due to the failures of Plaintiffs to comply with the requirement of a pre suit tort notice in accord with the directives of the MTCA.

In addition all state law claims are barred by the one year statute of limitations. Miss Code Ann.§ 11-46-11 (3)(a) mandates that "All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on

which the liability phase of the action is based, and not after." The subject events took place on July 27, 2017 and suit was filed June 19, 2019. Docket # 1 Complaint. Miss Code Ann.§ 11-46-11 (3)(b) specifies "failure to file suit within the time allowed is an absolute bar to any further proceedings under this chapter." Miss Code Ann.§ 11-46-11 (3)(d) (ii) amplifies with "The limitations period provided in this section controls and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations that would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter." Intentional torts and the tort of intentional infliction of emotional distress have a one year statute of limitations. *Jones v. Fluor Daniel Services Corp.*, 32 So. 3d 417 (Miss. 2010). All state law claims are time barred.

## 6. Conclusion

Some civil rights relative to use of force have been bestowed on illegal aliens in specific contexts. See Fifth Amendment due process rights in *Ziglar v. Abassi*, 137 S. Ct. 1843, 1864-65, 198 L. Ed. 2d 290 (2017). Ismael Lopez did not develop substantial connections sufficient to give rise to any civil rights as asserted in the Complaint. Use of force civil claims are meant to be a deterrent but so also are the laws of immigration. Federal civil rights are not civil rewards for violating the laws of the United States. Neither Plaintiff has standing. All state law claims should be dismissed. The Motion to Dismiss for Defendant City should be granted.

Respectfully submitted, this the 4th day of September, 2019.

/s/ *Katherine S. Kerby*
Katherine S. Kerby, MSB # 3584
Attorney for the City of Southaven,Mississippi,
Defendant

Of Counsel:
Kerby Law Firm
Post Office Box 551
Columbus, MS 39703
email: ksearcyk@bellsouth.net
fax: 662-328-9553
phone: 662-889-3733

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF

system which sent notification of such filing to all Counsel of record including the following:

Michael Carr, Esq.

Murray B. Wells, Esq.

Aaron A. Neglia, Esq.

SO CERTIFIED, this the 4th day of September, 2019

s/ *Katherine S. Kerby*
KATHERINE S. KERBY