**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

---

| | |
|---|---|
| **CLAUDIA LINARES as spouse of ISMAEL LOPEZ, Deceased, and Edward T. Autry as Administrator of the ESTATE of ISMAEL LOPEZ, Deceased,** )<br>)<br>)<br>)<br>)<br>) | |
| ) | **Case No.: 3:19cv133-NBB-RP** |
| **Plaintiffs,** )<br>) | |
| vs. )<br>) | **JURY DEMANDED** |
| **CITY OF SOUTHAVEN, STEVE PIRTLE, in his official capacity as Chief of Police of the Southaven Police Department, OFFICER SAMUEL MAZE, Individually and in his official capacity as a Southaven Police Officer, OFFICER ZACHARY DURDEN, Individually and in his official capacity as a Southaven Police Officer, and JOHN DOES 1-25,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** ) | |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS CITY OF SOUTHAVEN'S MOTION TO DISMISS [Doc. 17] and
ZACHARY DURDEN'S AMENDED MOTION TO DISMISS [Doc. 19]
BASED ON STANDING AND/OR ABSENCE OF JURISDICTION, AND/OR,
IN THE ALTERNATIVE,
DISMISSAL BASED ON SOVEREIGN IMMUNITY**

---

COMES NOW, the Plaintiffs, CLAUDIA LINARES as spouse of Ismael Lopez, Deceased, and Edward T. Autry as Administrator of the Estate of ISMAEL LOPEZ, Deceased, by and through their counsel of record, and file this their Response in Opposition to Defendant to the City of Southaven and Zachary Durden's Amended Motions to Dismiss Based on Standing and/or Absence of Jurisdiction, and/or in the alternative, Dismissal Based on Sovereign Immunity [Doc. 17 & 19]. Because both the City of Southaven and Defendant Durden make

identical arguments, through the same counsel, Plaintiffs file this response to both, and would show the Court:

## I. BACKGROUND

This case arises from the illegal shooting, and death of Ismael Lopez when members of the Southaven Police Department trespassed upon the wrong property, without any probable cause, failed to identify themselves as law enforcement and ultimately woke Mr. Lopez and then shot him in the back of the head through a closed door. Mr. Lopez died instantly, and his body was found by his wife, Claudia.

## II. LAW AND ARGUMENT

### A. Standard of Review

#### 1. Rule 12

When reviewing a motion to dismiss for failure to state a claim, courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Williamson v. Tucker,* 645 F.2d 404, 415-16 (5th Cir. 1981). The complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is the Defendants' burden to show the Plaintiffs have failed to state a claim. Clearly the Complaint in this matter presents sufficient factual matter to state a claim. The Complaint identifies the Plaintiffs, the Defendants, and Federal Constitutional violations and state court common law claims against each Defendant and the basis for same. Rule 12 is satisfied.

#### 2. Rule 56

Rule 12(b) provides that a motion to dismiss is automatically converted to a Rule 56 motion for summary judgment if the court considers matters outside the pleadings. Here, Defendants in

both motions [Doc 17 & Doc 19] have attached multiple exhibits to the motion to dismiss. If the Court considers those materials, then these two motions should be treated as motions for summary judgment. If the motions are treated as motions for summary judgment, the Court must determine whether no genuine issue of material fact exists such that summary judgment is appropriate. *Williamson*, 645 F.2d 416. Here, there are clear issues of material fact, particularly as related to Plaintiffs' standing to bring claims against both Defendants Southaven and Durden.

**B. Plaintiffs Have Standing To Bring Their Claims.**

The broad and unsupported statements set forth in Defendant Southaven's Motion [Doc. 17] and Defendant Durden's Amended Motion [Doc. 19], and Briefs in support thereof, cause their precise argument to be unclear. Furthermore, Defendants' arguments are not only confusing and unsubstantiated, they are a collection of factual misrepresentations, void of controlling or persuasive law, replete with xenophobic undertones, and a non-judicious use of this Court's time and resources, as well as the time and resources of Plaintiffs. Notwithstanding Defendants' failure to truthfully articulate a cohesive argument regarding the Plaintiffs' standing, Plaintiffs make a good faith effort to address same.

>  1. *Defendants' Motion to Dismiss and Amended Motion to Dismiss must be converted to a motion for summary judgment.*

When Defendants brought their Motion to Dismiss [Doc. 17], Amended Motion to Dismiss [Doc. 19], and Briefs in support thereof in order to dismiss the claims based on lack of standing, they each included numerous extraneous documents. Defendants actually acknowledged that they are making "a factual attack supported by evidence." [See Defendant Durden *Amended Motion* Doc 20 at 14]. Should the Court consider any one of the documents filed by the Defendants beyond the pleadings, the motions to dismiss must be converted into a motion for summary judgment.

The facts alleged in Plaintiffs' Complaint for Damages [Doc. 1], when presumed true, are more than sufficient to establish the standing of Claudia Linares, as the surviving spouse and widow of Ismael Lopez, as well as the standing of the Estate of Ismael Lopez, by and through its personal representative, Edward T. Autry.

Should this Court find it appropriate and necessary to convert Defendant Southaven's Motion to Dismiss and Defendant Durden's Amended Motion to Dismiss into ones for summary judgment, their motions must still be denied as Defendants have failed to show there exists no genuine issue as to any material fact regarding Plaintiffs' standing to bring causes of action on behalf of Ismael Lopez and the beneficiaries of his estate.

> 2. *The Estate of Ismael Lopez, by and through its personal representative, Edward T. Autry, has standing to bring claims for the wrongful death of Ismael Lopez.*

Mississippi law makes clear the persons who have standing to bring a claim for the wrongful death of another individual:

> Whenever the death of any person . . . shall be caused by any real, wrongful or negligent act or omission . . ., [t]he action for such damages may be brought in the name of the *personal representative* of the deceased person . . . for the benefit of all persons entitled under the law to recover, or by *widow* for the death of her husband . . . .

Miss. Code Ann. § 11-7-13 (emphasis added).

Edward T. Autry is the duly appointed and serving Administrator, a/k/a personal representative, of the Estate of Ismael Lopez. Mississippi law specifically vested in Mr. Autry, in his capacity as the Administrator for the Estate of Ismael Lopez, the ability to bring legal causes of action against the parties responsible for the wrongful death of Ismael Lopez, including Defendants Durden and the City of Southaven.

Rather than acknowledge the clear, unambiguous provisions of Miss. Code Ann. §11-7-13, Defendants fabricate an argument replete with misleading facts, if not outright falsehoods,

and a plethora of red herring defenses. Defendants erroneously claims the appointment of Edward T. Autry is "voided by either misrepresentations or by errors in the appointment process." [Doc 18 at 19 & Doc. 20 at 18]. It is obvious from their briefs that these Defendants are unfamiliar with estate and probate matters and did not make the effort to familiarize themselves with same prior to filing their Briefs.

> (a) Service of process is not required to open an intestate estate administration in Mississippi.

Defendants complain that the "waivers for service of process" were invalid because same were signed before filing the petition to open the Estate of Ismael Lopez. [Doc. 18 at 19 & Doc 20 at 18]. As a preliminary matter, Plaintiffs are not aware of any waivers for service of process in the estate matter, nor is service of process required in order to open an intestate estate administration in Mississippi. Claudia Linares and Rodolfo Linares, as heirs at law of Ismael Lopez, each signed a one-page document titled Affidavit, Joinder, and Waiver evidencing their support of the initial petition and the appointment of Edward T. Autry as the Administrator of the Estate of Ismael Lopez. Defendants similarly complained that process was not served on Angel Linares, nor was a waiver obtained. [Doc. 18 at 19 & Doc 20 at 18].

It is impossible to determine how Defendants conjured the argument that service of process was necessary in the estate administration, as there is no statutory or even persuasive authority cited to suggest that service of process is necessary to open an intestate estate administration in Mississippi. Regardless, Defendants' argument completely fails to reference any authority to support their argument that the appointment of Edward T. Autry as the Administrator of the Estate of Ismael Lopez was invalid.

> (b) Matters related to the administration of the Estate of Ismael Lopez are properly determined in the state court matter.

Edward T. Autry is the duly appointed and serving Administrator of the Estate of Ismael

5

Lopez. He is an officer of this Court. Defendants' allegations that Mr. Autry's appointment was the product of fraud are unsubstantiated and not well taken. Edward T. Autry properly petitioned the state court to be appointed Administrator of the Estate of Ismael Lopez, and to represent the interests of its beneficiaries. The state court found Mr. Autry a fit and appropriate individual to serve as the Administrator and so appointed him. No beneficiary or other interested party has objected to Mr. Autry's appointment.

In the event an interested party desires to object to the state court's appointment of Edward T. Autry as the Administrator of the Estate of Ismael Lopez, same is properly filed in the estate matter. *See Marshall v. Marshall*, 547 U.S. 293, 298 (2006) ("[T]he probate exception reserves to state probate courts the . . . administration of a decedent's estate."). Similarly, any objection regarding the heirs at law of the Estate of Ismael Lopez are properly determined in the estate matter. Unless ordered otherwise by the state court having jurisdiction over the administration of the Estate of Ismael Lopez, Edward T. Autry is the duly appointed Administrator, and by the authority vested in him pursuant to Miss. Code Ann. § 11-7-13, Edward T. Autry is authorized to bring a claim for the wrongful death of Ismael Lopez on behalf of the Estate of Ismael Lopez and its beneficiaries.

Even assuming, *arguendo*, Defendants could in fact prove statements involving the paternity of Ismael Lopez were incorrect, or prove that Edward T. Autry, as the Administrator of the Estate, had not properly notified the heirs-at-law of Ismael Lopez of the probate administration, Defendants failed to reference any authority that would substantiate their argument to void or even call into question the standing of Edward T. Autry, as the Administrator of the Estate of Ismael Lopez. Moreover, Defendants failed to cite even persuasive authority to support their allegations for one simple reason: none exists. Defendants

conjured baseless arguments in a desperate attempt to challenge the well-settled standing of Edward T. Autry, as the Administrator of the Estate of Ismael Lopez, to file a complaint against Defendants City of Southaven and Durden and several others for the wrongful death of Ismael Lopez. Instead, Defendants offered numerous items of unsubstantiated, extraneous evidence to support his baseless arguments, which serve no purpose other than a malign attempt to discredit and embarrass the grieving children and wife of Ismael Lopez.

> 3. *Claudia Linares, as the surviving spouse of Ismael Lopez, has standing to bring claims for the wrongful death of Ismael Lopez and standing to bring claims for the tortious acts of Defendants.*

Miss. Code Ann. §11-7-13 similarly vests in Claudia Linares, the widow of Ismael Lopez, the same authority to bring legal causes of action against the parties responsible for the wrongful death of Ismael Lopez. Faced with such clear statutory authority vested in Claudia Linares to bring claims against Defendants for the wrongful death of her husband, Ismael Lopez, in addition to myriad claims arising from the brutality of his death and the pain and suffering resulting therefrom, Defendants resorted to fabricating facts. Specifically, Defendants falsely claimed that "[Claudia] Linares has no standing due to her status as a common law only claimed marital relationship." [Doc. 18 at 10 & Doc. 20 at 10]. Defendants then proceeded to offer a string of false and highly offensive alternatives to describe the marital relationship between Claudia Linares and Ismael Lopez.

Plaintiffs challenge Defendants to cite in the pleadings where Claudia Linares claimed a common law marital status to Ismael Lopez. She did not. Plaintiffs similarly challenge Defendants to produce the "credible documentary support that [Claudia] Linares was not legally married to Ismael Lopez." [Doc. 18 at 7 & Doc. 20 at 7]. No such documentation was included among the exhibits attached to either Defendant Southaven's Motion to Dismiss or Defendant Durden's Amended Motion to Dismiss.

7

Plaintiffs' Complaint for Damages specifically alleged that Claudia Linares and Ismael Lopez were married at the time Defendants killed Ismael Lopez. [Doc. 1 at ¶ 1]. Said allegation was made in accordance with Rule 11 of the Federal Rules of Civil Procedure, and when taken as true, establishes the standing of Claudia Linares sufficient to survive a motion to dismiss. It is not customary or required to attach marriage certificates to pleadings such as Complaint for Damages. Notwithstanding, due to the malicious and false allegations made by Defendants, attached hereto as Exhibit "1" is a copy of the Certificate of Marriage issued to Claudia Linares and Ismael Lopez by the State of Arkansas, County of Crittenden.

4.    *Defendants arguments rise to the level of sanctionable under Rule 11.*

For Defendants to dishonor the sanctity of the marriage of Claudia Linares and Ismael Lopez with their malign allegations of bigamy and condescending description of Claudia Linares as a live-in girlfriend is reprehensible. [Doc. 18 at 10 & Doc. 20 at 10]. For Defendants to make these false statements based on nothing more than "information" is something beyond reprehensible; it is sanctionable. [Doc. 18 at 10 & Doc. 20 at 10]. Defendants' wanton disregard for the facts at the expense of a grieving widow is in flagrant violation of the spirit of Rule 11(b):

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if

>specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. Proc. 11(b).

Defendants, in their respective motions, state the basis for denying the factual contention that Claudia Linares was married to Ismael Lopez was "on information." [Doc. 18 at 10 & Doc. 20 at 10]. However, Defendants did not merely deny the marriage of Claudia Linares and Ismael Lopez. Rather, Defendants sought to harass and embarrass Claudia Linares when they maliciously stated the following:

>On information, [Claudia] Linares has no standing due to her status as a common law only claimed marital relationship that she refers to as wife, or as a live in girlfriend, or as a person with two husbands, or due to bigamy, or as a result of a series of religious or social event ceremonies relative to the theme of marriage not sanctioned by applicable civil law.

[Doc. 18 at 10 & Doc. 20 at 10].

Defendant Durden claims Claudia Linares is "without creditability" and referred to her as a "bigamous paramour." [Doc. 6 at 17][1]. In furtherance of this unwarranted attack against the character of Claudia Linares, Defendants City of Southaven and Durden, without any evidence or condition of statement, acted as judge and jury when they declare Claudia Linares was "an illegal alien who harbored a convicted felon also in possession of a firearm." [Doc 18 at 13 & Doc. 20 at 12]. Defendants fail to appreciate they have neither the authority nor the evidence to accuse and adjudicate Claudia Linares of criminal activity and by including such language Defendants each violated both the spirit and the letter of Rule 11(b)(3).

Rather than simply deny or challenge the validity of the marriage, Defendants went out of their way to malign the reputation of Claudia Linares and Ismael Lopez and to further harass and inflict emotional pain on a woman suffering the death of her husband. It was Defendant Durden

---

[1] Interestingly, this attack is present in Defendant Durden's initial brief in support of his motion, but is conspicuously missing from his "amended" brief.

9

who fired the gun that killed Ismael Lopez. Defendant Southaven grossly failed to train, supervisor, and monitor Defendant Durden. The fact that Defendants now use this Court as the forum to so blatantly and aggressively attack the credibility and character of the victim's widow is the epitome of adding insult to injury.

### C. The Constitution Of The United States Does Provide Protection To Ismael Lopez, Regardless Of His Immigration Status.

In short, as demonstrated *infra*, it is beyond settled that the Plaintiffs are able to rely on the Constitutional Protections of the Fourth and Fourteenth Amendments of the United States Constitution. Defendants argue and would have this Court believe that it is perfectly fine to shoot and kill non-citizen human beings, regardless of status, living on American soil and contributing to this Country, without regard to the Fourth and Fourteenth amendment. When making these morally reprehensible and repugnant arguments, Defendants are necessarily doing one of three things: demonstrating woeful ignorance of the law, intentionally misrepresenting the law to this Court, or advocating for a change in whom upon American Soil are entitled to Constitutional protections.

Because there is no request by the Defendants to change the law with respect to who is protected, this Court is left to only consider the first two options. Plaintiffs urge this Court to again consider its power to sanction Defendants for such gross negligence or misrepresentations to the Court.

> **No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to *any person within its jurisdiction* the equal protection of the laws.**

-Section One of the 14th Amendment to the United States Constitution (Emphasis added).

As much as Defendants seem to want to place the Plaintiffs outside the borders of our country, Ismael Lopez and Claudia Linares were within the jurisdiction of the United States at the time Ismael Lopez was killed by Zachery Durden acting under the color of authority of the Southaven Police Department.

The United States Supreme Court ruled in *Zadvydas v. Davis*, 533 U.S. 678 (2001) that "due process" of the 14th Amendment applies to all aliens in the United States whose presence may be or is "unlawful, involuntary or transitory."

Twenty years before the Supreme Court ruled:

"The illegal aliens who are ... challenging the state may claim the benefit of the Equal Protection clause which provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.' Whatever his status under immigration laws, an alien is a 'person' in any ordinary sense of the term ... the undocumented status of these children does not establish a sufficient rational basis for denying benefits that the state affords other residents." *Plyler v. Doe*, 457 U.S. 202 (1982)

Digging even deeper into Defendants' dubious claims, in *Almeida-Sanchez v. United States,* 413 U.S. 266 (1973), the Supreme Court held that that all criminal charge-related elements of the Constitution's amendments (the First, Fourth, Fifth, Sixth and the Fourteenth) such as search and seizure, self-incrimination, trial by jury, and due process protect non-citizens - documented or otherwise.

As that case so effectively cites Justice Jackson:

> "These [Fourth Amendment rights], I protest, are not mere second-class rights, but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary

government."

*Brinegar v. United States,* 338 U. S. 160, 180 (Jackson, J., dissenting).2

Defendants want this Court to believe that their preferred case of *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), stands for the proposition that an officer acting under the color of law may shoot aliens on the soil of our country without consequence or Constitutional scrutiny. Had Defendants bothered to actually read the holding of that cited case, they would have discovered this:

"Held: The Fourth Amendment does not apply to the search and seizure by United States agents of property owned by a nonresident alien and located **in a foreign country**." *Verdugo-Urquidez*, 494 U.S. 259, 264-275(1990) (emphasis added). This was not a case about whether police can accidentally kill aliens on American soil. This was a case about whether someone who was located and arrested in Mexico can challenge searches and seizures resulting from his arrest on foreign soil.

Defendants then follow this errant path to argue *United States v. Portillo-Munoz*, 643 F. 3rd 437 (5th Cir. 2011) somehow strips Fourth Amendment protections to residents whose status is "illegal". It does not. Defendants fail to share with the Court that *Portillo-Munoz* was a Second Amendment case in which the Court directly pointed out why that case **did not** impact the Fourth Amendment: "The purposes of the Second and the Fourth Amendment are different. The Second Amendment grants an affirmative right to keep and bear arms, while the Fourth Amendment is at its core a protective right against abuses by the government." *Id.* at 441-42.

**D. State Law Claims Pursuant to MTCA.**

Plaintiffs make no state law claims pursuant to the Mississippi Tort Claims Act in their

---

2 Robert Jackson was the former United States Attorney General as well as the Chief Prosecutor for the International Military Tribunal (Nuremberg Trials).

Complaint. To the extent any MTCA claims are argued in Defendants' Motions and Briefs, those arguments are moot.

### III. CONCLUSION

For the above reasons, Defendant Southaven's Motion to Dismiss [Doc. 17] and Defendant Durden's Amended Motion to Dismiss [Doc. 19] are not be well-taken and should be summarily denied. Further, because the arguments are so dubious and tenuous or wholly fabricated without basis, Plaintiffs request sanctions pursuant to Rule 11. All Counsel for Plaintiffs are prepared to submit invoices reflecting their time and expenses responding to these motions and supporting briefs at the Court's pleasure.

**ORAL ARGUMENTS PREFERRED**

Respectfully Submitted,

**WELLS & ASSOCIATES, PLLC**
**CARR LAW FIRM, PLLC**


s//: *Michael S. Carr*
Michael Carr (MSB# 102138)
Murray B. Wells, *Pro Hac Vice*
Aaron A. Neglia *Pro Hac Vice*
Attorneys for Plaintiffs


OF COUNSEL:

**WELLS & ASSOCIATES, PLLC**
Murray B. Wells (Admitted *Pro Hac Vice*)
Aaron A. Neglia (Admitted *Pro Hac Vice*)
81 Monroe Avenue, Suite 400
Memphis, TN 38103
Tel: (901) 507-2521
Fax: (901) 507-1791
wells@thewellsfirm.com
neglia@thewellsfirm.com

**CARR LAW FIRM, PLLC**
Michael S. Carr, (MSB #102138)
301 West Sunflower Rd., Suite D
Cleveland, MS 38732
Tel: (662) 441-1529
Fax: (662) 441-1530
mcarr@carrlawpllc.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all Counsel of record including the following:

Katherine S. Kerby, Esq.

SO CERTIFIED, this the 17TH day of September, 2019

*/s/ Michael S. Carr*
MICHAEL S. CARR