IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
MISSISSIPPI, OXFORD DIVISION

**CLAUDIA LINARES, et al**                                                                                  **PLAINTIFFS**

vs.                                                                                                                     NO. 3:19cv133-NBB-RP

**CITY OF SOUTHAVEN, et al**                                                                                **DEFENDANTS**

**CITY OF SOUTHAVEN REPLY TO PLAINTIFFS' MOTION RESPONSE DKT #24**

Defendant City acknowledges as did Defendant Durden and adopts all aspects of the Durden Reply into and as part of the City's Reply.

### A. ISMAEL LOPEZ HAD NO FEDERAL CIVIL RIGHTS AS ALLEGED

Ismael Lopez had no Fourth or Fourteenth Amendment civil rights as alleged in the Complaint. There is no jurisdiction based on the absence of any legally recognized relationship of Ismael Lopez with the United States at the time of his death. In the alternative, there is no standing by either Plaintiff due to the illegal alien status of Lopez at the time of his death in tandem with his insufficient connections with the United States of the type, dignity, and caliber required for standing.

Some constitutional civil rights are bestowed on aliens in the United States who entered with a form of permission. Plaintiffs assert that *Zadvydas v. Davis*, 533 U.S. 678 (2001) held that the due process clause of the "14th Amendment" may be invoked by all aliens in the United States whether their presence on American soil is "unlawful, involuntary, or transitory." Docket #24 page ID # 491. This is error. Completely absent from *Zadvydas* is any mention of the Fourteenth Amendment. The opinion reflects that "A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'deprive any person ...of... liberty without due process of law.' Freedom from imprisonment...lies at the heart of the liberty that Clause protects." *Id* at \*690 at ¶¶ 3-4. Jurisdiction in *Zadvydas* was based

on habeas corpus rights of 28 U.S.C. § 2241( c )(3). *Id* at \*\*2504, \*\*2249. The Fifth Amendment liberty interest of an illegal alien on American soil is an interest "between imprisonment and supervision under release conditions that may not be violated." *Id* at \*\*2502. "A removable alien does not have the same liberty interest as a citizen does." *Id* at \*717.

*Zadvydas* cited *Kaplan v. Tod*, 267 U.S. 228, 230, 45 S. Ct. 257, 69 L. Ed. 585 (1925) which is informative in it's holding that despite nine years presence in the United States that an excluded alien was "still in theory of law at the boundary line and had gained no foothold in the United States." *Zadvydas* at \*693. Ismael Lopez was adjudicated excludable and deported. See Motion 1 Exhibit affidavit of Charlie Hill at docket #17-1 p.p. 6,15 Ismael Lopez birthplace Mexico, p.p. 8, 11 felony conviction assault in the 2nd degree, p.16 for probation violation, for arrest August 31, 2001 with adjudication as an excludable alien, present without permission, illegal entry, deported to Mexico October 30, 2001, illegal entry arrest March 13, 2013, alien removal under section 212 and 237, 8 USC 1182 re-entry, deported to Mexico April 2, 2013, p.17 for illegal entry arrest April 5, 2013, adjudication of alien inadmissibility under section 212, reinstatement of deportation order, and deportation,and Motion Exhibit 3 convictions. Ismael Lopez, like *Zadvydas* was "still in theory of law at the boundary line and had gained no foothold in the United States." *Zadvydas* at \*693.

Similarly inapposite is Plaintiffs citation of *Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982) and it's holding relative to a challenge to the denial of a free public education by the State of Texas to undocumented school-age children "under the Equal Protection." *Id* at \*205. *Plyler v. Doe* relied on precedent involving Fifth Amendment due process rights,6th Amendment rights, or lawful alien presence. *Id* at \*210 at ¶¶ 1-2. See *Shaughnessy v. Mezei*, 345 U.S. 206, 212, 73 S. Ct. 625, 629, 97 L. Ed. 956 (1953)(alien detained at the border denied entry as excluded alien). *Yick Wo v. Hopkins*, 118 U.S. 356,6 S. Ct. 1064, 30 L.Ed. 220 (1886) (Fourteenth Amendment due

process protection to Chinese nationals lawfully present as "other persons" under 42 U.S.C. § 1983 by treaty). *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S. Ct. 977, 981, 41 L. Ed. 140 (1896) (lawful presence by treaty). *Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982) is limited by *United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 1058, 108 L. Ed. 2d 222 (1990). All cases listed in *Plyler v. Doe* relied on by Plaintiffs are discussed in *Verdugo-Urquidez* at \*\*1064 at ¶ 5. See *Plyler v. Doe* limited by *Verdugo-Urquidez* at p.1058, *Wong Wing* at p.1064, and *Yick Wo* at p.1064.

Plaintiffs finally argue *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973). The very first sentence of the opinion states "Petitioner, a Mexican citizen and holder of a valid work permit, challenges the constitutionality of the Border Patrol's warrantless search of his automobile 25 air miles north of the Mexican border." Ismael Lopez is not alleged in the Complaint or response to have had a valid work permit or any permission to be in the United States. See Motion Exhibit 1 at docket #17 documenting that Ismael Lopez was an illegal alien at the time force was applied and had previously gone due process afforded by the court system and adjudicated excludable. Plaintiffs' quote from a dissent in *Brinegar v. United States,* 338 U.S. 160,\*179, 69 S. Ct. 1302, 93 L.Ed.1879 is not relevant. *Brinegar* did not involve an alien but search of a bootlegger's car.

*United States v. Verdugo-Urquidez,* 494 U.S. 259, \*265, 110 S. Ct. 1056,108 L.Ed. 2d 222 (1990) stated "'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." See *United States ex rel. Turner v. Williams*, 194 U.S. 279, 292, 24 S. Ct. 719, 723, 48 L. Ed. 979 (1904) for excludable alien is not entitled to First Amendment rights, because "[h]e does not become one of the people to

whom these things are secured by our Constitution by an attempt to enter forbidden by law." See absence of substantial connections in *Zaiden v. Trump*, 317 F.Supp.3d 8,*28 (D.D.C. June 13, 2018) (citing *Verdugo-Urquidez* at 271). Ismael Lopez was not like *Almeida-Sanchez* who was the "holder of a valid work permit" government permission to be present in the United States. Ismael Lopez was like the "excludable alien" in *United States ex rel. Turner v. Williams.* As an excludable alien, Ismael Lopez could not have become one of "the people" under the First and Fourth Amendments due to his entry "forbidden by law."

Plaintiffs claim Defendants did not read *United States v. Verdugo-Urquidez* or it would have been known the case involved an event in a "foreign country." See docket #24 ¶ 2. Defendants's briefs stated at docket #18 page ID 354 ¶ 2 and at docket #20 at page ID# 464 ¶ 2 the following "In *United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990), the Supreme Court addressed the question of the Fourth Amendment's extraterritorial reach. The claim surrounded a warrantless search of premises of a Mexican national in Mexico by United States DEA Agents authorized by Mexican officials and was reviewed under a Fourth Amendment suppression motion." Clues that the case was represented for an event in a "foreign country" appear in the terms employed of "extraterritorial" and "search of premises of a Mexican national in Mexico."

*United States v. Verdugo-Urquidez* is controlling and held that the Fourth Amendment "extends its reach only to 'the people,'" which "seems to have been a term of art employed in select parts of the Constitution," including the "Preamble, Article I, and the First, Second, Fourth, Ninth, and Tenth Amendments." *Id.* at 265, 110 S. Ct. 1056. The Court found this "textural exegesis" as suggesting that "the people" in the Constitution "refers to a class of persons who are part of the national community or who have otherwise developed sufficient connection with this country to be considered a part of that community."*Id*. Rejected was the Ninth Circuit's former global application

Page 4 of 10

of the Fourth Amendment. *Id*. at 274-75, 110 S. Ct. 1056. See *United States v. Singh*, 924 F. 3d 1030,*1056 (9th Cir. May 16, 2019) for "Nonimmigrant aliens, like those unlawfully present, are neither citizens nor members of the political community."

The *Verdugo-Urquidez* opinion of no Fourth Amendment civil rights of illegal aliens is applicable in light of the adjudication of Ismael Lopez as an excludable alien or as an illegal alien. One author described *Verdugo-Urquidez* as "under the significant voluntary connections test, an undocumented immigrant's illegal residence in the United States vitiates any legitimate connections the person may have with this country. The five reasons offered by the *Guitterez I* court for rejecting the significance of all of Guitterez's connections illuminate the court's real basis for analysis: that Guitterez was an undocumented immigrant and, therefore, could not have had a legitimate connection to the United States. All of Guitterez's examples of significant voluntary connections-his family ties, his payment of taxes, his acquisition of a valid driver's licence-were negated by his undocumented presence in the United States. The court concludes as much in its summary:... ***At most, [Guitterez] has established that he has been successful in avoiding detection by the immigration authorities, thereby facilitating his residence in this country for the past twelve years***." (Emphasis added by author). Victor C. Romero*, The Fourth Amendment Rights of Undocumented Immigrants: On Guitterez and the Tort/Immigration Law Parallel,* 35 Harvard Civil Rights-Civil Liberties Law Review 57, *72 (2000). See Lopez convictions for switched car tags docket# 17-1 p.35, no driver's license, no insurance, pp.25-29, D.U.I. conviction p. 11, and other convictions at docket #17-3.

Plaintiffs conclude their response arguing as "errant path" any assertion of *United States v. Portillo-Munoz*, 643 F. 3d 437 (5th Cir. 2011). Plaintiffs state that Defendants "fail to share with the Court that *Portillo-Munoz* was a Second Amendment case." Docket # 24 p. ID #42 ¶ 3. In contrast, see Defendants' briefs at docket# 18 last sentence of p. ID # 356 to first sentence of p. ID# 357 and

docket #20 p. ID# 466 at the last full paragraph which reflect "See the definition of 'the people' in the context of the Second Amendment holding that an illegal alien in the United States has no Second Amendment Constitutional right. *United States v. Portillo-Munoz*, 643 F. 3d 437, 440 (5th Cir. 2011)." Clues that Defendants accurately represented *Portillo-Munoz* as a Second Amendment case are found in use of the terms of "in the context of the Second Amendment" as well as "holding that an illegal alien in the United States has no Second Amendment Constitutional right" and by inclusion in the same sentence as "*United States v. Portillo-Munoz*, 643 F. 3d 437, 440 (5th Cir. 2011)."

    Like *Verdugo-Urquidez*, *Portillo-Munoz* has generated scholarly examination with one author acknowledging that in *Portillo-Munoz* "the Fifth Circuit became the first federal court of appeals to address the constitutionality of a federal statute that criminalizes an undocumented immigrant's possession of a firearm. Relying on *Heller,* a divided panel upheld the statute, concluding that undocumented immigrants do not have Second Amendment rights because they are not among 'the people' in the Second Amendment." Recent Cases*, Constitutional Law-Second Amendment-Fifth Circuit Holds That Undocumented Immigrants Do Not Have Second Amendment Rights-United States v. Portillo-Munoz*, *643 F. 3d 437 (5th Cir. 2011)*, 125 Harvard Law Review 835 (2012)(citing *District of Columbia v. Heller*, 554 U.S. 570, 580  128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)). This commentator agreed the Fifth Circuit "noted that neither the Supreme Court nor the Fifth Circuit has held that undocumented immigrants possess *Fourth* Amendment rights, which also reside in 'the people.'" *Id* at 835 (emphasis in original). The critique was "This statement was unnecessary in light of *Heller*,...because the court implied that undocumented immigrants may not have Fourth Amendment rights when, in fact, that matter remains unresolved." *Id* at 836. The comment examined the *Portillo-Munoz* opinion by Fifth Circuit Judge Garwood who wrote that *Heller* provided guidance about the meaning of "the people" in the Second Amendment as the right of "law-abiding, responsible

citizens." The Court analyzed the Constitution's other references to "the people" which were determined to refer to "all members of the political community." This invalidated the arguments of Portillo-Munoz of having Second Amendment rights because undocumented immigrants were held to not be "Americans, law-abiding citizens, or members of the political community." *Id* at 837 (citing *Heller,* 128 S. Ct. at 2790-91). Judge Garwood explained that in *Verdugo-Urquidez* the Supreme Court "considered the Fourth Amendment's scope and said 'the people' protected by the First, Second, and Fourth Amendments 'refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." Portillo-Munoz argued that he possessed a sufficient connection to the United States because he had lived and worked in the country for eighteen months, paid rent, and helped financially support others. The Fifth Circuit replied that neither the Supreme Court nor the Fifth Circuit had held that the Fourth Amendment applies to "undocumented immigrants." *Id* at 837. *Portillo-Munoz* refutes the quote Plaintiffs made at docket #24 p. ID #492 on different purposes of the Second and the Fourth Amendments as an assumption was used in the opinion for argument purposes. See *Portillo-Munoz* at 440-441. The 2012 Harvard Law Review comment agreed that the 5th Circuit in *Portillo-Munoz* relying on *Heller* and *Verdugo-Urquidez* "implied its view on an unresolved constitutional question. This implied view might be quite consequential because an appellate court's dicta are persuasive within its circuit. As one district court said, 'a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even [when] those pronouncements appear by way of dicta.' In short, dicta today can dictate outcomes tomorrow." *Id* at 842. The Harvard Law Review author directly refutes Plaintiffs' claim that it is"beyond settled that the Plaintiffs are able to rely on the Constitutional Protections of the Fourth and Fourteenth Amendments of the United States Constitution." See assertion at Docket#24 Response at p. ID# 490.

*District of Columbia v. Heller*, 554 U.S. 570, 580 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) favorably cited *Verdugo-Urquidez*'s definition of "the people" as "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." "Portillo relies on *Verdugo-Urquidez* and argues that he has sufficient connections with the United States to be included in this definition of 'the people,' but neither this court nor the Supreme Court has held that the Fourth Amendment extends to a native and citizen of another nation who entered and remained in the United States illegally." *Portillo-Munoz* at 440.

A subsequent Harvard Law Review article focused more on the history and meaning of "the people" in the Constitution relative to it's use by the Supreme Court in both *Heller* and *Verdugo-Urquidez* in *The Meaning of "The People" in the Constitution,* 126 Harvard Law Review 1078 (February 2013). The writer described the aftermath of *Heller* and *Verdugo-Urquidez* as "Once *Verdugo-Urquidez* articulated the 'substantial connections' test and used intratextualism, lower courts followed suit. In 1995, the Ninth Circuit noted that the Fourth Amendment...protects a much narrower class of individuals than [does] the Fifth Amendment, "which extends to all 'persons.'" *Id* at *1081. The author noted the criticism of the *Heller* majority opinion in dissent by Justice Stevens was that "the 'centerpiece' of the Court's argument was its claim 'that the words 'the people'...in the Second Amendment must have the same meaning, and protect the same class of individuals, as...in the First and Fourth Amendments'" *Id* at *1083. The commentator discussed *Portillo-Munoz* recognizing for the Fifth Circuit that undocumented immigrants were not among "the people" of the Second Amendment and that the Fifth Circuit opinion decided that a whole class of individuals was not among "the people." This class of people as a set of people, according to the writer, also implied that no additional test was needed such as substantial connections in assessing the absence of the involved civil rights if the involved individual was a member of the class of persons of undocumented

immigrants. The article quoted *Portillo-Munoz*, 643 F. 3d at 440 with recognition that "neither the Supreme Court nor the Fifth Circuit had held that the Fourth Amendment applies to undocumented immigrants." *Id* at *1083, *1099 fn. 68. This author refutes Plaintiffs "beyond settled" claim on the "Constitutional Protections of the Fourth and Fourteenth Amendments of the United States Constitution." Plaintiffs blindness to the law does not make Defendants arguing applicable law sanctionable.

The 2013 Harvard Law Review article characterizes *Heller* as "both narrowing the scope of 'the people' and extending this definition to other constitutional clauses" agreeing this view is plausible and "it matters." The comment explained this meant that "*Heller's* reference to the political community...might mean that various groups that had First and Fourth Amendment rights could lose them...It could exclude minors, felons and noncitizens (whether lawful or not) from inclusion among 'the people.'" The author noted that the only "scholar to address the issue in depth, Professor Pratheepan Gulasekaram, wrote that *Heller* seems "intended to constrict the constitutional definition of "the people." *Id* at *1085-1086 citing Pratheepan Gulasekaram, *"The People"of the Second Amendment: Citizenship and the Right to Bear Arms*, 85 N.Y.U.L. Rev. 1521, 1536 (2010). See also Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, *1563 n. 67 (2009) for "*Heller* ...suggested that 'the people' referred to in the Second Amendment should be treated the same as 'the people' referred to in the First and Fourth Amendments." The Fifth Circuit agreed in *Portillo-Munoz,* 643 F. 3d 437, at 440. There is no jurisdiction and no federal claim as a matter of law.

Respectfully submitted, this the 24th day of September, 2019.

        /s/ *Katherine S. Kerby*
        Katherine S. Kerby, MSB # 3584
        Attorney for Defendants

Of Counsel:
Kerby Law Firm, Post Office Box 551
Columbus, MS 39703
email: ksearcyk@bellsouth.net
fax: 662-328-9553; phone: 662-889-3733

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all Counsel of record including Michael Carr, Esq., Murray B. Wells, Esq., and Aaron A. Neglia, Esq.

SO CERTIFIED, this the 24th day of September, 2019

s/ <i>Katherine S. Kerby</i><br>KATHERINE S. KERBY