IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
MISSISSIPPI, OXFORD DIVISION

**CLAUDIA LINARES as spouse of ISMAEL LOPEZ,**
Deceased, and Edward T. Autry as Administrator of
the Estate of Ismael Lopez, Deceased                                             **PLAINTIFFS**

vs.                                                                                                  NO. 3:19cv133-NBB-RP

**CITY OF SOUTHAVEN, STEVE PIRTLE, in his official capacity**
**as Chief of Police of the Southaven Police Department, et al**        **DEFENDANTS**

**BRIEF IN SUPPORT OF DEFENDANT  DEFENDANT STEVE PIRTLE'S MOTION TO DISMISS BASED ON STANDING AND/OR ABSENCE OF JURISDICTION, AND/OR, IN THE ALTERNATIVE, DISMISSAL BASED ON SOVEREIGN IMMUNITY**

**1. Introduction**

Steve Pirtle, hereinafter "Pirtle" is named in the Complaint a Defendant "in his official capacity as Chief of Police of the Southaven Police Department." Pirtle asserts in the capacity in which he was sued that Plaintiff Linares is not credible in the assertion that she was legally married to Ismael Lopez based on her apparent directly conflicting sworn statement in the Estate court file of Lopez as to the paternity of her son Rodolfo as Ismael Lopez which is contradicted by the birth certificate of Rodolfo. Plaintiff Linares has no standing to sue, no standing exists for either Plaintiff for the claims related to the alleged rights of Ismael Lopez,  Plaintiff Autry was appointed Administrator by virtue of apparent conflicting affidavits with records of vital statistics and/or material misrepresentations thereby voiding his appointment ab initio. Pirtle moves for dismissal for these reasons and other reasons articulated in the supporting briefs and replies filed at dockets #17,18,19,20, 30, and 31. Neither Plaintiff has standing. All state law claims are barred by sovereign immunity. The persons claimed as legally related to Ismael Lopez in the estate proceeding have a court record of conflicting evidence on the issue and Plaintiff Linares'

apparent prior marriage has no allegation of or record of termination before her purported marriage to Ismael Lopez. No civil rights under the Fourth or Fourteenth Amendments of the United States Constitution exist as alleged by Plaintiffs. These are the same issues asserted in the Motions of the City of Southaven filed at docket #17 and Defendant Zachary Durden filed at docket # 19. These issues are also now asserted on behalf of Defendant Pirtle by reference to the Motions of Southaven and Durden with exhibits and supporting briefs and replies all filed of record which court record filings are hereby explicitly adopted by reference thereto in support of the Motion to Dismiss of Defendant Pirtle but not replicated herein for judicial economy.

Plaintiffs sue asserting at paragraph IV "Civil Rights Violations by Defendants" arising under the Fourth and Fourteenth Amendments of the "Constitution of the United States" pursuant to 42 U.S.C. § 1983 due to "unlawful seizure" and "excessive force" also characterized as a due process "liberty" deprivation of Ismael Lopez based on the same use of force. Docket # 1 ¶¶54-55, 59-61. Plaintiffs describe these as alleged violations of rights secured by the "Constitution of the United States of America and the Constitution of the State of Mississippi." Docket # 1 ¶¶55-56. No provision of the Mississippi Constitution is identified. Plaintiff Linares asserts damages based on her familial association with Ismael Lopez due to the use of force as to Ismael Lopez under the "Fourteenth Amendment to the United States Constitution." No use of force is alleged by Steve Pirtle. Docket # 1 ¶ 94. Plaintiffs assert at V "Common law claims" described as "wrongful death" as contemplated by "Mississippi statutory and case law" as well as "intentional acts" and "acts of negligence." Docket # 1 ¶ 97. Alleged torts of "negligent and/or intentional infliction of emotional distress" appear at docket # 1 ¶ 99.

There is no allegation in the Complaint as to the legal or illegal presence of Ismael Lopez or of Claudia Linares in the United States or of their citizenship status. The Motions filed and

exhibits establish both Linares and Lopez as nationals of the Country of Mexico. The exhibits establish that Ismael Lopez was a convicted felon in the Uniteds States due to an aggravated assault charge in the State of Washington. The exhibits establish that Ismael Lopez had been adjudicated an excludable alien in the courts of the United States. The exhibits establish that Ismael Lopez had been ordered by the courts of the United States deported at least twice and was in the process of a third deportation when he was arrested a third documented time for illegal entry into the United States. Motion Exhibit 1 filed at docket #17-1 at pages ID 186-197.

The exhibits establish that Linares gave a sworn statement to the Chancery Court of DeSoto County, Mississippi that is in direct conflict with the information she supplied as to the paternity of her son Rodolfo to Mexican authorities reflected on the Rodolfo birth certificate. Motion Exhibit 2 filed at docket #17-2 at pages ID 221-225 and 265. As Linares has the burden on standing then she must demonstrate her standing to sue that she was either not married to Rodolfo's father who is named on his birth certificate or the marriage was terminated legally before any subsequent ceremony of marriage with Ismael Lopez. If Plaintiff Linares is not a member of the first line of preferred persons under the Mississippi Wrongful Death statute then the persons with exclusive standing to sue are either the legally recognized children of Ismael Lopez or his parents. See *Applewhite v. City of Lambert*, 2009 WL 10675383 (N. D. Miss. July 22, 2009) explaining preferred and remote classes of persons with exclusive standing to sue for an existing member of the preferred class to the exclusion of all other persons under the Mississippi Wrongful Death statute so long as that person establishes membership in such preferred class. See recognition that only members of the preferred class have the right to bring a wrongful death suit. *Applewhite* at *2.

**2. Standard of Review and Burden of Proof**

The briefs and replies of Southaven and Durden and legal authority cited therein have been adopted in support of this Motion by reference and are not replicated herein for said reason. This Motion is also pursued under the rules cited therein as Rule 12(b)(1) on the grounds that Plaintiffs lack standing and so this court is without jurisdiction. "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F. 3d 1130, 1134 (10th Cir. 2014). The presumption arises as the courts of the United States are courts of limited jurisdiction. *Grace v. American Central Ins. Co.*, 109 U.S. 278, 284, 3 S. Ct. 207, 210-11, 27 L.Ed. 932 (1883).

**3. No Standing**

The party seeking to invoke federal jurisdiction must have constitutional standing under Article III of the United States Constitution. Neither Plaintiff in this case has Article III standing or statutory standing as defined in *Applewhite,* supra. Article III standing relates to the absence of Fourth and Fourteenth Amendment civil rights of Ismael Lopez and/or of Claudia Linares or derivative representation for same by Plaintiff Autry and so absence of said alleged rights for those who now seek to stand in place for Ismael Lopez. Plaintiff Linares, as was Ismael Lopez, is present in the United States without permission of the United States and in violation of United State law and as a result of her illegal presence and/or the status of Ismael Lopez at the time of the events underlying this lawsuit and so not imbued with the Fourth or Fourteenth Amendment civil rights as alleged. "A Plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.(TOC), Inc.*, 528 U.S. 167,185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' *Grace v. American Central Ins. Co.*, 109 U.S. 278, 284, 3 S. Ct. 207,

210-11, 27 L.Ed. 932 (1883), but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). See example of approval of standing based on affirmative record in *Schwartz v. Welch*, 890 F. Supp. 565(S.D. Miss. June 20, 1995).

**4. There is and was no legally recognized relationship between Ismael Lopez or Plaintiff Linares with the United States that supports the alleged Fourteenth and Fourth Amendment claims made by either Plaintiff.**

Plaintiffs name the Fourteenth and Fourth Amendment as the predicates for their section 1983 claims. The Fourteenth Amendment claim does not exist "because the Fourth Amendment, although ultimately unavailing,'provides an explicit textual source of constitutional protection' for the allegations in this case." *Jones v. Perez,* 2019 WL 5268618 (5th Cir. 2019)(citing *Graham v. Conner*, 490 U. S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "All claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Kimble v. Coffeeville Police Dept., et al*, 2019 WL 5068659 (N.D. Miss. Oct. 9, 2019).

As a general rule, we interpret the Constitution according to its text. *Utah v. Evans*, 536 U.S. 452, 474, 122 S. Ct. 2191, 153 L. Ed. 2d 453(2002). The opinion of Chief Justice Roberts articulated the test as "When seeking to discern the meaning of a word in the Constitution, there is no better dictionary than the rest of the Constitution itself. Our precedents new and old have employed this structural method of interpretation to read the Constitution in the manner in which it was drafted and ratified-as a unified, coherent whole." *Ariz. State Legislature v. Arizona Independent Redistricting*, 56 U.S.__ , 135 S. Ct. 2652, *2680, 192 L. Ed. 2d 704(2015). "When a term, such as 'the people,' is being used as a 'term of art employed in select parts of the Constitution, 'that term should be given

the same meaning in each context and contrasted with the use of other terms." *Baca v. Colorado Department of State*, 935 F. 3d 887, *945 (10th Cir. 2019) (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, *265,110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990)). "And because we treat usage of a term consistently throughout the Constitution, *Verdugo-Urquidez*, 494 U.S. at 265, 110 S. Ct. 1056," then usage of the term of art of "the people*"* in the Second Amendment should be the same consistent usage as in the Fourth Amendment. *Baca v. Colorado Department of State*, 935 F. 3d 887, *946 (10th Cir. 2019) (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, *265,110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990)).

Ismael Lopez may have been a person on American soil but, due to his documented record and pursuant to the Fourth Amendment, he was not one of the "the people" of the United States entitled to the civil rights invoked in this lawsuit. The Fourth Amendment explicitly states that it's coverage extends to the "right of the people." This refers to members of the polity of the United States and not to persons adjudicated excludable. The analysis is informative on this issue in *United States v. Singh*, 924 F. 3d 1030 (9th Cir. 2019) relative to Second Amendment rights of "the people"and the conviction of a Mexican national for violating a United States statute that prohibits nonimmigrant visa holders from possessing firearms and ammunition while in the United States. Singh was convicted as an alien on American soil unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(5)(B). He claimed his conviction violated his Second Amendment right to possess a firearm while on American soil. This was rejected based on *District of Columbia v. Heller*, 554 U.S. 570, 580 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). *Id* at 1056. The *Singh* opinion reviewed authority on the construction of the Second Amendment term "the people" relative to the civil right to possess firearms including with "Compare *United States v. Portillo-Munoz*, 643 F. 3d 437, 440 (5th Cir. 2011)(concluding that 'the people' does not include illegal aliens given *Heller*'s descriptions

of the right extending to those in 'the political community'),*United States v. Flores*, 663 F. 3d 1022, 1023 (8th Cir. 2011)(per curiam)(agreeing with the Fifth Circuit), and *United States v. Carpio-Leon*, 701 F. 3d 974, 979 (4th Cir. 2012)(illegal aliens do not belong to the class of law-abiding members of the political community to whom the Second Amendment gives protection." *Singh* affirmed the conviction holding that even though "we address a lawfully admitted, nonimmigrant alien in this case" that the right to bear arms found in "the people" of the Second Amendment has been interpreted in two ways as some "courts have read the historical right as one afforded only to citizens or those involved in the political community, while others have focused instead on an individual's connection with the United States." *Id* at *1057. *Singh* recognized "Nonimmigrant aliens, like those unlawfully present, are neither citizens nor members of the political community." *Id* at *1057.

Using the same analytical application, *United States v. Verdugo-Urquidez*, 494 U.S. 259, *265,110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990)) stated that the Fourth Amendment "extends its reach only to 'the people,'" which "seems to have been a term of art employed in select parts of the Constitution," including the "Preamble, Article I, and the First, Second, Fourth, Ninth, and Tenth Amendments." *Id.* at 265, 110 S. Ct. 1056. The Court found that "the people" in the Constitution "refers to a class of persons who are part of the national community or who have otherwise developed sufficient connection with this country to be considered a part of that community." Claimants do not have standing unless they have "developed substantial connections with this country." *Id*. at 271, 110 S. Ct. 1056. *Verdugo-Urquidez*'s definition of "the people" applicable to this lawsuit is "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." There is no controlling precedent that contradicts the quoted United States Supreme Court statements in *Verdugo-Urquidez* on the definition of "the people" as a term of art employed in the "Preamble, Article I, and the First,

Second, Fourth, Ninth, and Tenth Amendments"as used in the Fourth Amendment.

See consistent definition of "the people" in the context of the Second Amendment holding that an illegal alien in the United States has no Second Amendment Constitutional right in *United States v. Portillo-Munoz*, 643 F. 3d 437, 440 (5th Cir. 2011). The Fifth Circuit stated in *United States v. Portillo-Munoz*, 643 F. 3d 437, at 440 that "Portillo relies on *Verdugo-Urquidez* and argues that he has sufficient connections with the United States to be included in this definition of 'the people' but neither this court nor the Supreme Court has held that the Fourth Amendment extends to a native and citizen of another nation who entered and remained in the United States illegally." The usage definition of "the people" in the Second Amendment as was used in *Portillo-Munoz* is the same as the usage definition in the Fourth Amendment as explained in *Verdugo-Urquidez.* There is no controlling precedent that contradicts the Fifth Circuit Court of Appeals as quoted from *United States v. Portillo-Munoz* that "neither this court nor the Supreme Court has held that the Fourth Amendment extends to a native and citizen of another nation who entered and remained in the United States illegally."

In *City of El Cenizo, Texas*, 890 F. 3d 164 (5th Cir. 2018) the Fifth Circuit held that the Fourth Amendment does not require probable cause of criminality to detain in the immigration context. In doing so the Court quoted again from *Portillo-Munoz* that "the Supreme Court has never 'held that the Fourth Amendment extends to a native and citizen of another nation who entered and remained in the United States illegally.'" *Id* at p. 192 footnote 20. The same footnote 20 also states that "We pretermit the question whether the Fourth Amendment even applies to many aliens subject to ICE-detainer requests. *See Castro v. Cabrera*, 742 F. 3d 595, 600 (5th Cir. 2014)(holding that the 'entry fiction' applies to preclude illegal aliens' Fourth Amendment detention claims." Ismael Lopez having entry fiction status and so no Fourth Amendment right was included in support of the Motions and

Briefs filed by Southaven and Durden and so incorporated into the Pirtle Motion and this brief.

### 5. Conclusion

Some civil rights have been bestowed on illegal aliens in specific contexts such as the due process clause of the Fifth Amendment. *Ziglar v. Abassi*, 137 S. Ct. 1843, 1864-65, 198 L. Ed. 2d 290 (2017). This was not invoked by Plaintiffs. Any representations by Plaintiffs that Defendant asserted that aliens have no civil rights would constitute malicious willful misrepresentations by Plaintiffs. The claims as asserted have no standing. At no time did Linares or anyone standing in the shoes of or on behalf of Ismael Lopez claim legal presence in the United States. Each day of illegal presence "works an additional unfairness, not against him (any person not legally present) but against those thousands of refugees who daily are striving to secure legal entrance into the country."*Prassinos v. District Director, Immigration and Naturalization Service*, 193 F. Supp. 416 (N. D. Ohio June 3, 1960). Neither Plaintiff has standing. The Motion to Dismiss for Defendant Pirtle should be granted in toto.

Respectfully submitted, this the 13th day of November, 2019.   /s/ *Katherine S. Kerby*

*Katherine S. Kerby, MSB# 3584,*

Of Counsel: Kerby Law Firm                                    Attorney for Steve Pirtle,

Post Office Box 551, Columbus, MS 39703           official capacity Defendant

email: ksearcyk@bellsouth.net; fax: 662-328-9553;

phone: 662-889-3733          **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all Counsel of record. Certified November 13, 2019.

s/ *Katherine S. Kerby*
Katherine S. Kerby