**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

---

| | |
|---|---|
| **CLAUDIA LINARES as spouse of ISMAEL LOPEZ, Deceased, and Edward T. Autry as Administrator of the ESTATE of ISMAEL LOPEZ, Deceased,** )<br><br>)<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>vs. )<br>)<br>**CITY OF SOUTHAVEN, STEVE PIRTLE,** )<br>**in his official capacity as Chief of Police of the** )<br>**Southaven Police Department, OFFICER** )<br>**SAMUEL MAZE, Individually and in his** )<br>**official capacity as a Southaven Police Officer,** )<br>**OFFICER ZACHARY DURDEN, Individually** )<br>**and in his official capacity as a Southaven** )<br>**Police Officer, and JOHN DOES 1-25,** )<br>)<br>**Defendants.** ) | **Case No.: 3:19cv133-NBB-RP**<br><br>**JURY DEMANDED** |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT STEVE PIRTLE'S MOTION TO DISMISS [Doc. 38], AND/OR, IN THE
ALTERNATIVE, DISMISSAL BASED ON SOVEREIGN IMMUNITY**

---

COMES NOW, the Plaintiffs, CLAUDIA LINARES as spouse of Ismael Lopez, Deceased, and Edward T. Autry as Administrator of the Estate of ISMAEL LOPEZ, Deceased, by and through their counsel of record, and file this their *Response in Opposition to Defendant Steve Pirtle's Motion to Dismiss Based on Standing and/or Absence of Jurisdiction, and/or in the alternative, Dismissal Based on Sovereign Immunity* [Doc. 38]. Because Defendant Steve Pirtle largely makes similar claims as to those made by Defendants City of Southaven and Zachery Durden (through same counsel), Plaintiffs incorporate their Responses to those Motions to

Dismiss in their entirety [Doc. 24]. However, Defendant Pirtle does attempt to bolster previous "entry fiction" arguments by supplying the Court with additional case law and arguments not previously submitted. This Court should find those new arguments without merit and not brought in good faith as outlined below.

> A. **The "Entry Fiction" argument brought by Defendant Pirtle has been squarely addressed by the Fifth Circuit.**

Defendant's Motion and Memorandum in Support fail to inform the Court that controlling law of this Circuit has been resolved and the 5th Circuit has already addressed the entirety of his "entry fiction" arguments and summarily dispatched them. Since each Defendant seems to have overlooked binding precedent, Plaintiffs simply submit the plain holding of *Martinez-Aguero v. Gonzalez*, 459 F.3d. 618 (5th Cir. 2006):

> Gonzalez argues that Martinez-Aguero had no constitutional rights at the time of the alleged incident because she was an alien who attempted to enter the country illegally and was not admitted. Gonzalez relies on *United States v. Verdugo-Urquidez*, 494 U.S. 259, 274-75, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), which held that an alien who has no voluntary attachment to the United States enjoys no extraterritorial Fourth Amendment protection. The Court in *Verdugo-Urquidez* analyzed the text and history of the phrase "the People" in the Fourth Amendment and concluded that it "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id*. at 265, 110 S.Ct. 1056. The Court acknowledged that it had held that aliens enjoy certain constitutional rights, but those cases "establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with the country." Gonzalez also relies on *Johnson v. Eisentrager*, 339 U.S. 763, 765-66, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), in which the Court rejected the extraterritorial application of the Fifth Amendment.
> The crucial distinction is "that certain constitutional protections available to persons inside the United States are unavailable to aliens outside our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653

(2001). The Court in *Zadvydas* reasoned that a statute that authorized the indefinite detention of removable aliens present in the U.S. would pose serious constitutional problems. See *id*. at 682, 121 S.Ct. 2491. The Court distinguished *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), which held that a lawfully admitted alien who left the country and was denied reentry for security reasons could be indefinitely detained at Ellis Island. The "critical" difference for the Court was that the alien in *Mezei* never reentered the United States; "[h]ence, he was treated, for constitutional purposes, as if stopped at the border." See *Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491.4

This doctrine is called the "entry fiction," and Gonzalez urges its application to this case: Because Martinez-Aguero was denied entry into the United States, and because the fiction requires us to treat her as if stopped at the border (even though she was technically present in U.S. territory), and because the Fourth and Fifth Amendments have no extraterritorial application, Gonzalez contends he should be entitled to qualified immunity.

We disagree. This conclusion is inconsistent with *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir.1987), in which we **specifically limited the application of the "entry fiction" to immigration and deportation matters**:

The "entry fiction" that excludable aliens are to be treated as if detained at the border despite their physical presence in the United States determines the aliens' rights with regard to immigration and deportation proceedings. It does not limit the right of excludable aliens detained within United States territory to humane treatment.
*Id.* at 1373.

*Id*. at 624, 625. [emphasis added]. Accordingly, because the 5th Circuit has held that "entry fiction" applies only to immigration and deportation proceedings and preserves the 4th, 5th and 14th Amendment rights of peoples on the soils of the United States, Defendant Pirtle's *Motion to Dismiss* must be denied.

Furthermore, Ismael Lopez (deceased) had far more that minimal connections to the United States. His immigration status was not known, questioned or even issue at the time he was killed by Defendant Durden, acting under the authority of Defendant Pirtle and City of

Southaven. More importantly, it is clearly alleged (and undisputed) in the Complaint that Ismael Lopez resided and lived in the city of Southaven, Mississippi. [Doc 1, ¶1, 18]. The argument that someone who lives and resides in a state does not have significant connections to the United States in order to claim 4th or 14th Amendment protections is beyond specious; it is reprehensible. As such, this Court is again urged, with renewed vigor, that it should consider the failure of the Defendant to bring legally supported arguments before this Court as sanctionable, particularly in light of additional meritless arguments made.

B.     **Conclusion**

For the reasons stated herein and for the reasons stated in Plaintiffs' Responses to the Motions to Dismiss filed by Defendant Durden and Defendant City of Memphis [Doc 24], this Court is respectfully urged to deny the instant Motion and consider an award of sanctions.

**ORAL ARGUMENTS PREFERRED**

Respectfully Submitted,

**WELLS & ASSOCIATES, PLLC**
**CARR LAW FIRM, PLLC**


*s//: Michael S. Carr*
Michael Carr (MSB# 102138)
Murray B. Wells, **Pro Hac Vice**
Aaron A. Neglia **Pro Hac Vice**
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the forgoing with the Clerk of the Court using the ECF system, by which all counsel of record were notified on this the 20th day of November.

*/s/ Michael S. Carr*
Michael S. Carr

Case: 3:19-cv-00133-NBB-RP Doc #: 40 Filed: 11/20/19 5 of 5 PageID #: 598

5