IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CLAUDIA LINARES, as spouse of**
**ISMAEL LOPEZ, Deceased and EDWARD**
**T. AUTRY as Administrator of the ESTATE of ISMAEL**
**LOPEZ, Deceased**                                            PLAINTIFF

v.                                                                                    No. 3:19cv133-MPM-RP

**CITY OF SOUTHAVEN, STEVE PIRTLE,**
**in his official capacity as Chief of Police of the**
**Southaven Police Department, OFFICER**
**SAMUEL MAZE, Individually and in his**
**official capacity as a Southaven Police Officer,**
**OFFICER ZACHARY DURDEN, Individually**
**and in his official capacity as a Southaven**
**Police Officer, and JOHN DOES 1-25,**                        DEFENDANTS

## ORDER

This cause comes before the court on the motions of defendants for summary judgment and to exclude the testimony of plaintiff's expert Ken Katsaris. This court, having considered the memoranda and submissions of the parties, is prepared to rule.

The present motions require this court to resolve certain issues and claims which remain outstanding following its September 28, 2022 order addressing the prior summary judgment motions filed by the individual defendants, Southaven Police Officers Samuel Maze and Zachery Durden. This court's prior summary judgment order denied summary judgment as to the § 1983 claims against Maze and Durden, but it granted their motions as they related to the state law claims against them. [Docket entry 109]. Before addressing the merits of the second round of summary judgment motions, this court must first deal with the fact that plaintiff failed to file a timely response to them, with the exception of the motion to strike Katsaris' testimony.

1

Plaintiff has now filed an opposed motion for leave to file responses to defendants' summary judgment motions out of time, and, as is generally the case with such motions, the crucial issue is whether her failure to file a timely response can be attributed to "excusable neglect." *See, e.g. Buckmire v. Mem'l Hermann Healthcare Sys. Inc.,* 456 Fed. App'x 431, 432 (5th Cir. 2012). Before addressing the merits of this issue, this court must first state for the record that it regards plaintiff's motion for leave as being essentially moot in this case. This is because this court's order today was largely written *prior* to plaintiff's motion for leave to file a response out of time, and, in considering the summary judgment issues below, it specifically addresses the allegations of municipal liability discussed in her complaint. This court has reviewed plaintiff's untimely summary judgment responses, and it finds that they add nothing substantively new to the allegations in her complaint, and, in many places, her briefing simply quotes those allegations verbatim. [Docket entry 206 at 6]. Where plaintiff's summary judgment brief does seek to supplement these bare allegations in her complaint, it does so with the same sort of generalized proof which, as discussed below, almost invariably proves insufficient to create fact issues regarding municipal liability in § 1983 cases involving claims arising out of alleged wrongdoing by low-level officers.

While this court therefore regards plaintiff's motion for leave to file out of time as largely moot, it finds for the record that she has a very weak argument that her failure to file a timely response to the summary judgment motions was the result of "excusable neglect" on her part. In so stating, this court emphasizes that plaintiff did, in fact, timely seek an extension of time to respond to defendants' motion to strike Katsaris' testimony, citing the very same arguments regarding her counsel's busy schedule which she makes in seeking permission to file responses to the summary judgment motions out of time. [Docket entry 196 at 1-2]. In its order below,

this court grants plaintiff's motion for time as to the motion to strike Katsaris' testimony, and it would have likewise granted a motion for extension of time as to the pending summary judgment motions, if she had only asked for one in a timely manner. This court can discern no good reason why plaintiff did not seek such an extension as to the summary judgment motions, since those motions had already been filed at the time she sought additional time to respond to the motion to strike Katsaris' testimony.

This court began working on the instant order shortly after plaintiff failed to either file a response to the summary judgment motions or to seek additional time to do so. This court is not a mind-reader, and it is simply not able to function as a trial court if the parties fail to at least *request* additional time to respond to pending motions. In cases where parties fail to do so, this court generally assumes that they have filed all the responses which they intend to file and that the issues are ripe for a ruling. It would have taken all of five seconds for plaintiff to add the words "and summary judgment motions" to her aforementioned motion for additional time, and her counsel's busy trial schedule is no excuse for her failure to do so. In the court's view, to characterize plaintiff's failure to timely respond in this case as being the result of "excusable neglect" would render the term essentially meaningless, and it would likely abuse its discretion if it were to hold otherwise. Plaintiff's motion for leave to file responses out of time will accordingly be denied, and this court will now proceed to a discussion of the pending summary judgment motions in this case.

In addressing defendants' prior summary judgment motions, this court summarized the basic facts of this case as follows:

> A few minutes after midnight on July 23rd, 2017, three officers of the Southaven Police department were dispatched to 5878 Surrey Lane in Tate County, Mississippi to arrest Mr. Samuel Pearman, a white male, for aggravated domestic assault on a female. The officers, Zachary Durden, Samuel Maze, and Sergeant Thomas Jones, each responded

> separately to the dispatch. Officer Maze was familiar with the subdivision because he had previously patrolled it.
>
> To locate Pearman's home, Officer Durden consulted his GPS, which showed that the address was located near north Neshoba Road. Officer Maze followed Officer Durden separately to the location identified on the GPS. When they exited their cars, Officer Maze informed Durden that he believed the residence to be south of where they were currently parked. Nevertheless, they soldiered on.
>
> It is apparent from the pleadings and memoranda that the officers were not entirely sure where they were going or whether they were at the right location. In any event, they approached the home of the decedent, which all now agree, was not the home they were looking for. It is also clear from a reading of the pleadings, statements, affidavits, and arguments that the decedent Ismael Lopez, a Hispanic male, opened his door at some point and was shot in the back of the head by Officer Durden, who was being "covered" by the other officers. From this point, the parties agree on few facts.

*Linares v. City of Southaven*, No. 3:19-CV-133, 2022 WL 4543179, at *1 (N.D. Miss. Sept. 28, 2022).

In considering this second round of summary judgment motions, this court is called upon to rule upon certain issues of municipal liability which are properly before it, and it is also asked to essentially reconsider its prior order denying Officer Maze's qualified immunity and summary judgment motions. With regard to the latter motion, Officer Maze seeks summary judgment, once again, based upon his argument that the evidence is clear that he did not fire the fatal shot in this case and that he accordingly may not be held liable for any constitutional violation in this case. In his renewed summary judgment motion, Officer Maze cites no newly-discovered evidence which this court did not consider in its initial order, and it strikes this court as being, for all intents and purposes, a motion for reconsideration of its prior ruling, long after the deadline for filing a motion for reconsideration has passed.

In a December 14, 2022 order, this court noted its suspicion that defendants might seek to revisit summary judgment issues which have already been decided, writing that:

> This court notes that, once discovery has been completed, it is entirely appropriate that the City of Southaven and Chief Pirtle file motions for summary judgment, if they wish to do so. This court's qualified immunity order did not address any constitutional claims

4

>against the City, and, accordingly, these claims have yet to be resolved. However, this court has already ruled upon Officers Maze and Durden's qualified immunity motions, and the qualified immunity issue has thus been resolved until trial. This court only feels it necessary to make this clear based upon defendants' history of filing unsuccessful (and, at times, blatantly meritless) dispositive motions, which leads it to suspect that they might seek to go to the well one more time. This suspicion is strengthened by the fact that, for whatever reason, defendants failed to appeal this court's order denying their qualified immunity motions. While this may have been a conscious litigation decision on defendants' part, it also seems possible that the appeal "fell between the cracks" while they were changing counsel. Whatever the reason for defendants' failure to appeal, they themselves chose to file summary judgment motions when they did, and, in twenty years on the federal bench, this court cannot recall a case in which successive summary judgment motions were filed by a defendant based on qualified immunity. Given the extraordinarily large number of dispositive motions already filed by defendants in this case, and the fact that this case finds itself on the "three-year list" of older cases under the Civil Justice Reform Act, this court sees no reason why this case should be the first. It is hopefully unnecessary for this court to make this clear, and it only does so out of an abundance of caution.

[Slip op. at 6-7].

Officer Maze's evident disagreement with this court's prior ruling strengthens its suspicion that defendants did, in fact, inadvertently allow the interlocutory appeal deadline to pass while they were changing counsel and that they are improperly seeking a second bite at the apple to compensate for this oversight. Regardless of whether this is the case, this court does not intend to revisit issues which have already been decided, since it has not changed its evaluation of this case. This court notes for the record, however, that Officer Maze admitted in his deposition that he shot plaintiff's dog after feeling threatened by it and that these shots preceded the ones fired by Officer Durden at the decedent. [Depo. at 88, 93]. Specifically, Maze testified that:

>Q: How long after you shot your gun at the dog did you hear those shots?
>A: Approximately – approximately a second, maybe two seconds. It was an extremely short amount of time.

[Depo. at 93].

5

It thus seems entirely clear from the record that Maze was an integral part of the tragic events of this case and that he was the first officer to escalate what should not have even been a knock on plaintiff's door into a situation where officers are discharging their weapons at innocent civilians and/or animals who were simply trying to protect their home. In light of the foregoing, Maze's insistence that he is simply an innocent third party who should be spared the inconvenience and expense of a trial is unpersuasive to this court. This court remains of the view that this is a case where the jury, as the conscience of the community, should evaluate the facts and the conduct of the defendant officers. Having said that, this court does acknowledge that the claims against Officer Maze may involve closer issues than those against Officer Durden, and, that being the case, it will carefully consider any directed verdict motion which Maze might make after presentation of the evidence at trial. This court finds his present summary judgment motion to be procedurally and substantively improper, however, and it will accordingly be denied.

This court now turns to the motion for summary judgment filed by the City of Southaven, which seeks the dismissal of both the claims asserted against it directly, and also the official capacity claims asserted against Chief of Police Pirtle and officers Maze and Durden. It is well established that these official capacity claims are all properly considered to be asserted against the City itself, and this court will accordingly consider them together. In seeking to hold the City liable in this case, plaintiff faces an onerous burden arising from the U.S. Supreme Court's decision in *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell* and its progeny, a municipality may only be held liable under § 1983 for

6

violating a citizen's constitutional rights if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no respondeat superior liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018 (1978). The alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability under *Monell*, a plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory v. City of Jackson*, 335 Fed. App'x 446, 448-449 (5th Cir. 2009).

In this court's experience, by far the most common (and easiest) path for a plaintiff to overcome *Monell*'s stringent standard is by demonstrating that a "final policymaker" for a municipality committed the constitutional violation in question. Plaintiff appears to recognize

this fact, since her complaint makes every effort to characterize Chief Pirtle as being responsible for decedent's death. Specifically, plaintiff alleges that:

> 69. Plaintiffs aver that Defendant City of Southaven and Defendant Chief Pirtle are liable for the actions of the Defendants Officer Maze and Officer Durden as set forth above because Defendants City of Southaven and Chief Pirtle permitted, encouraged, tolerated, and ratified an official pattern, custom, and practice by its law enforcement officers violating the Federal Constitutional Rights of the public at large during the course of their law enforcement applications. The actions of Defendant Durden as alleged above were done pursuant to one or more policies, practices and/or customs of Defendant City of Southaven, including but not limited to the customs regarding identifying addresses and individuals, shooting through closed doors and shooting unknown individuals in the back that are retreating in fear.
>
> 70. After the incident, Defendants City of Southaven and Chief Pirtle determined that Defendants Maze and Durden had acted appropriately and in compliance with the policies, practices and customs of the Southaven Police Department with respect to the use of force against Ismael Lopez.
>
> 71. However, the actions of Defendants Maze and Durden during this incident were in direct violations of the policies, practices and customs of Defendant City of Southaven and the laws of the United States and the State of Mississippi regarding the use of deadly and/or excessive force.

[Complaint at 13-14].

Plaintiff has not alleged that Chief Pirtle was personally involved in the decision to enter her house or to shoot the decedent in this case, and this court is unpersuaded by her argument that his "ratification" of the shooting after the fact should subject him to liability under *Monell*. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated her constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements

8

an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates—even when he is present on the scene—because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L.Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

It is undisputed that Chief Pirtle was not even on the scene of the shooting in this case, and any actions he is alleged to have taken after the fact did not cause the alleged constitutional injury at issue in this case. This court therefore concludes that plaintiff has failed to establish genuine fact issues regarding whether Chief Pirtle personally caused any constitutional violations to occur, and she cites no authority which would support the application of a ratification theory under the circumstances of this case. While the shooting at issue in this case was undeniably tragic and quite arguably constituted a constitutional violation, this court is unpersuaded by plaintiff's argument that Chief Pirtle personally caused such violations to occur, under the stringent causation standards discussed above.

In her complaint, plaintiff makes rather conclusory assertions that other potential bases for municipal liability exist in this case, such as her claim that "[a]s a matter of both policy and practice, the Southaven Police Department and Chief Pirtle directly encourage, and are thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train and/or re-train, supervise and control officers, such that their failure to do so manifests deliberate indifference." Although failure to train employees may, under certain circumstances, constitute an official government policy giving rise to a claim under 42 U.S.C. § 1983, the U.S. Supreme

9

Court has made it clear that such circumstances are rare indeed. In *Connick*, the Supreme Court wrote that:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 103 L. Ed. 2d 412 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.

*Connick*, 563 U.S. at 61.

Establishing municipal liability under a failure to train theory generally requires proof of a pattern of prior similar violations, *Connick*, 563 U.S. at 62, and plaintiff has failed to sufficiently establish such a pattern in this case. In *Connick*, the Supreme Court gave a narrow reading to the so-called "single incident exception" to the deliberate indifference standard, which is implicated when, given the duties assigned to specific officers, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio*, 489 U.S. at 390. The single incident exception "is inherently a narrow one" and the Fifth Circuit has, much like the Supreme Court, been "reluctant" to expand it. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 385 (5th Cir. 2005). In the court's view, plaintiff's conclusory assertions that a failure to train led to the constitutional violations in this case are insufficient to overcome this stringent authority, and she cites no other arguable basis for municipal liability.

10

In her complaint, plaintiff also asserts that the City was deliberately indifferent in its hiring of officers, writing that:

> 87. Defendants City of Southaven and Chief Pirtle violated the civil rights of Decedent in that they were deliberately indifferent to the rights of Decedent and others through their hiring, firing, supervision and retention of officers.

[Complaint at 18]. In so arguing, plaintiff must confront yet another highly stringent U.S. Supreme Court decision in the municipal liability context, namely *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 117 S. Ct. 1382 (1997). In *Bryan*, the Supreme Court rejected similar claims based upon a City's alleged indifference in its hiring practices, writing that:

> Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. In the broadest sense, every injury is traceable to a hiring decision. Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights. * * * Bryan County is not liable for Sheriff Moore's isolated decision to hire Burns without adequate screening, because respondent has not demonstrated that his decision reflected a conscious disregard for a high risk that Burns would use excessive force in violation of respondent's federally protected right.

*Brown,* 520 U.S. at 415–16.

Without question, *Brown* establishes a highly stringent standard for recovery based upon allegations that a city was deliberately indifferent in its hiring practices, much as *Connick* does in the failure to train context. Considered together, these decisions make it clear that, in cases involving alleged constitutional violations by low-level police officers and deputies, a municipality will face *Monell* liability for any such violations only in extraordinarily rare cases. This has, in fact, been this court's experience in applying the *Monell* standard for many years. This court must therefore conclude that plaintiff's allegations and proof are insufficient to establish liability on the part of the City of Southaven for the actions of its officers in this case.

11

In so stating, this court would hasten to add that it has seen Southaven police officers come before it as defendants in far too many § 1983 cases, and, by granting the City's motion for summary judgment, it is by no means "vouching" for its hiring and training practices. To the contrary, this court concludes that the City could very much benefit from improvement in both of these areas, but its conclusion in this regard is simply not enough to establish municipal liability under the extraordinarily stringent standards set forth in *Connick*, *Brown* and similar cases. The City's motion for summary judgment is therefore due to be granted as to the federal claims against it.

This court notes that defendants have also filed a motion for summary judgment as to the state law claims against then, even though this court already ruled in its prior order that:

> The Plaintiffs assert various common law tort claims against the Defendants. Under the Mississippi Tort Claims Act, the individual bringing a claim against a municipality must provide notice to the city clerk in writing, containing a short and plain statement of the claim. ... The Plaintiffs have not provided evidence of such notice as required by the Act. Therefore, these claims are **DISMISSED**.

[Slip op. at *3]. Clearly, plaintiff's admitted failure to file a notice of claim bars *all* of her claims which might be asserted under the MTCA, including those against the City. The City appears to have filed this summary judgment motion out of an abundance of caution, in the event that this court's prior order was somehow intended to not encompass the claims against it. While this court is not convinced that this second summary judgment motion was strictly necessary, it hereby finds for the record that plaintiff's failure to file a notice of claim bars her MTCA claims against the City, and its motion for summary judgment as to the state law claims against it will therefore be granted.[1]

---

[1] Plaintiff concedes that Maze and Durden were acting in the course and scope of their employment in this case, and it is thus apparent that she has no state law claims against any defendant in this case, either within or outside the scope of the MTCA.

12

This court now turns to defendants' motion to strike the testimony of plaintiff's expert witness Ken Katsaris. In considering the parties' arguments, this court agrees with plaintiff that Katsaris is qualified to serve as an expert based upon his education, training, knowledge, and experience. This court agrees with defendants, however, that the manner in which plaintiff seeks to use Katsaris' testimony is simply not appropriate in a case of this nature. In particular, this court agrees with defendants' argument that:

> According to Katsaris's deposition testimony, in his Opinion No. 3, he "did find that there was excessive use of force. . . .it was inappropriate in terms of the tactics that were immediately leading up to it." In fact, Katsaris said that while he "didn't use those terms in his report" he determined "that the procedures the officers used were irresponsible, reckless, and that there was excessive force that would not be . . .objectively reasonable." According to Katsaris, he said basically the same thing in Opinion No. 3 on page 16.73 But, also according to Katsaris, the way he wrote it in his report was just "the terminology I use to avoid judges not wanting the expert to tell the jury that it was objectively unreasonable."
> In this regard, Katsaris is the ultimate " 'I win' expert who seek[s] to tell the jurors that they should find in favor of the plaintiffs with regard to all the claims" left in this case. This Court should follow its previous guidance and not allow "any expert to tell the jury how they should rule regarding the ultimate legal issues in this case," as "it seems clear that plaintiff seeks to use [Katsaris's] testimony for this purpose."

[Brief at 12 (record citations omitted)].

In agreeing with defendants that Katsaris' testimony should be stricken, this court wishes to emphasize that it has conducted a number of trials involving the constitutionality of the actions of police officers in which no expert testimony whatsoever was offered as to the officers' liability. As a general matter, this court does not believe that the jurors' ability to resolve the § 1983 issues before them suffered from the absence of such testimony in those cases. That being the case, this court looks with considerable skepticism upon plaintiff's contention that there is something about this case, involving a fact pattern which jurors can understand as a matter of common sense and experience, which requires an expert to "walk them through" the facts or issues.

13

This is not a products liability case involving complex manufacturing defects, but rather a § 1983 case involving a tragic but nevertheless straightforward fact pattern in which officers entered the wrong house, resulting in the death of an innocent man. That being the case, this court would only be inclined to permit Katsaris' expert testimony if it were confident that he was well aware of any limited amount of helpful testimony he was in a position to offer and not seek to offer opinions about the ultimate issues in this case. In so stating, this court notes that the Fifth Circuit has "affirmed the exclusion of expert reports where" they opine "that a defendant's use of force was unnecessary and objectively unreasonable" since "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues" and "reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion." *Valencia v. Davis*, 836 Fed. Appx. 292, 299-300 (5th Cir. 2020), citing *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020).

In his deposition, Katsaris essentially admitted that he was attempting to place before the jury his view that the defendant police officers acted unreasonably, even though he was well aware that such was improper. In particular, Katsaris testified that:

> Q: And is it your conclusion or your opinion that the force used in this case was excessive or improper?
> A: Well, it certainly – you know, it depends on the court, and sometimes judges are not wanting experts to go to the ultimate conclusion in the matter and render legal opinions invading the province of the jury or the judge, but, in essence, yes, I did find that there was excessive use of force. However, it was inappropriate in terms of the tactics that were immediately leading up to it.

[Depo. at 7]. If there is any meaningful difference between an expert offering an opinion that officers made an "excessive use of force" which was "inappropriate" and finding that they made an "objectively unreasonable" use of force prohibited by the Fourth Amendment, then that distinction escapes this court.

14

In his deposition, Katsaris suggested that, by avoiding using the precise term "objectively unreasonable," he was entitled to offer his opinion that "the procedures the officers used were irresponsible, reckless, and that there was excessive force used." [*Id.* at 8]. This court disagrees with Katsaris' hair-splitting description of the permissible scope of his testimony, and it finds that his primary goal in this case is to offer jurors his view that defendants did, in fact, act in an objectively unreasonable manner. Moreover, in cases where it seems clear that an expert is attempting to "backdoor" legal conclusions which he knows to be improper, this court concludes that the appropriate remedy is the exclusion of that expert's testimony altogether. In so ruling, this court notes that nothing will prevent plaintiff's counsel from arguing before the jury that they should make the same sort of inferences and conclusions from the record in this case as Katsaris found were appropriate in his expert report. This court does believe, however, that it is the job of jurors to reach their own conclusions in this regard, rather than having ultimate conclusions of liability in this case spoon-fed to them by a paid expert, whatever his credentials might be. Defendants' motion to strike Katsaris' testimony will accordingly be granted.

In light of the foregoing, it is ordered that

1) defendants' summary judgment motion as to the state law claims against them [188-1] is granted.

2) defendants' summary judgment motions as to the federal claims against them based on allegations of official or municipal liability [190-1, 192-1] are granted.

3) Officer Maze's summary judgment motion as to the § 1983 claims against him in his individual capacity [194-1] is denied.

4) Plaintiff's timely motion for an extension of time as to the motion to strike Katsaris' testimony [196-1] is granted.

15

5) Plaintiff's motion for leave to file her other summary judgment responses out of time [198-1] is denied.

So ordered, this, the 21st day of June, 2023.

                                              /s/ Michael P. Mills
                                           UNITED STATES DISTRICT COURT JUDGE