IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CLAUDIA LINARES, as spouse of
ISMAEL LOPEZ, Deceased and EDWARD
T. AUTRY as Administrator of the ESTATE of ISMAEL
LOPEZ, Deceased                                                                    PLAINTIFF

v.                                                                                 No. 3:19cv133-MPM-RP

OFFICER SAMUEL MAZE, Individually and in his
official capacity as a Southaven Police Officer,
OFFICER ZACHARY DURDEN, Individually
and in his official capacity as a Southaven
Police Officer, and JOHN DOES 1-25,                                                DEFENDANTS

### ORDER

Defendant Maze has filed a motion to reconsider this court's order on jury instruction issues. Time limitations do not allow this court to expound on this subject as much as it would like, but it will briefly explain why it chooses to stand by its ruling. This court acknowledges that it is bound by the U.S. Supreme Court's qualified immunity jurisprudence, including its daunting "clearly established" prong. This court is well aware that this prong is a stringent one, and defendant certainly has a good faith argument that its requirements are not met in this case. However, this court believes that its requirements *are* met, and, moreover, in situations where there are two arguable legal positions, its preferred approach is to err on the side of doing what it believes to be the right thing.

In this vein, this court will reiterate its view that "plaintiff has a very reasonable factual argument that, but for Officer Maze's actions, Ismael Lopez would still be alive today." [Order on jury instruction at 2-3]. Indeed, it seems self-evident that, in any heated armed encounter, the fact that one officer makes a conscious decision to fire his weapon tends to make it much more

1

likely that an officer standing next to him will follow suit. And the evidence in this case is clear that Officer Durden fired his weapon almost immediately after Maze fired his. This court does note for the record that, in his testimony at trial, Officer Durden denied that he was influenced by Maze's shot. However, this court note important inconsistencies between the testimony of the two officers which, it believes, could reasonably lead jurors to conclude that one or both of them was not testifying truthfully. Accordingly, this court believes that it is a fact issue for the jury whether, in offering helpful testimony for Maze at trial, Officer Durden was merely trying to "cover" for his partner.[1]

Ultimately, disputed factual issues are not a concern for this court in this order, since it is presently concerned with accurately instructing the jury regarding the applicable law. Under Maze's understanding of the law, in a situation where multiple officers are pointing their weapons at an armed suspect in a standoff, any of the officers is entirely free to be the first to fire his weapon, so long as he takes care to miss the suspect. An officer is even free to do so with malicious intent, hoping that his shot will cause his fellow officers to follow suit and kill the suspect. He may, under defendant's understanding of the law, do so completely secure in the knowledge that any legal liability resulting from the shooting will be faced by others, and not himself. Under defendant's theory of the law, the fact that the malicious officer took care not to strike, or "seize," the suspect is the beginning, middle and end of the Fourth Amendment analysis, and a court may look no further. This court regards this as an unconscionable result,

---

[1] This court does believe that plaintiff's claim against Officer Durden is, factually speaking, stronger than her one against Officer Maze. Considering this fact, and the uncertainty of how the Fifth Circuit will handle the legal issues discussed in this order on appeal, this court believes that it is at least arguable that plaintiff should consider making a tactical decision to drop her claim against Maze and proceed solely against Durden. This is, however, plaintiff's call to make.

and it will not accept that the law requires such a result, unless and until the Fifth Circuit instructs it otherwise.

Officer Maze espouses what this court regards as a very myopic view of Fourth Amendment liability which does not withstand close scrutiny. Specifically, Maze writes in his motion to rehearing that:

> The law is clear that an officer must first seize the plaintiff before any seizure can be considered excessive force. There must be an underlying seizure for direct liability Section 1983 claims against an officer.

[Motion for rehearing at 4]. If defendant's understanding of the law were correct, then there would be no such thing as bystander liability claims under the Fourth Amendment. And yet the Fifth Circuit has clearly held that "[b]ystander liability may be established where an officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *See Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir.2013), cert denied, ––– U.S. –––, 134 S.Ct. 1935, 188 L.Ed.2d 960 (2014). But how can this be? Under defendant's understanding of the law, this theory of liability should not even exist, since the bystander obviously does not "seize" the suspect. He merely stands and watches. And yet the Fifth Circuit has repeatedly held that bystander liability *does* exist under the Fourth Amendment, which is why this court is unable to accept that defendant's understanding of the law is correct.[2]

In setting forth its own understanding of the law, this court based its ruling on *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018)'s holding that a supervisor may face liability if he "affirmatively participates in the acts that cause the constitutional deprivation."

---

[2] This court does agree with defendant that *at least one* officer must have seized the plaintiff for Fourth Amendment liability to arise. But that is clearly the case here.

3

*Pena* was a 2018 case (and thus occurred after the events in this case), but it relied upon the 2008 decision of *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). This court will therefore make reference to the *Gates*, rather than *Pena*, holding in this order, since *Gates* was clearly existing law at the time of the events in this case. This court will readily admit that it would be more comfortable in relying upon *Gates* if it were not a supervisor liability case, but it explained its reasons for doing so, as follows:

> While Officer Mays was not acting as a supervisor in this case, this court does not believe that this fact removes the significance of the above language. To the contrary, this language involves simple causation principles which would clearly seem to apply whenever a plaintiff seeks to hold a particular defendant liable in a case in which another defendant was the one to commit the specific act which directly injured the plaintiff. That being the case, this court believes that the fact that the Fifth Circuit chose the words "affirmatively participates in the acts that cause the constitutional deprivation" and specifically provided for the "failure to act" as potentially giving rise to liability, mean that the narrow focus in defendant's proposed jury instructions on the firing of the fatal shot which killed Ismael Lopez is improper.

[*Id.* at 2].

In considering whether it is acting improperly in relying upon the "affirmatively participates in the acts that cause the constitutional deprivation" language in *Gates*, this court submits that one should focus less upon the exact choice of words and more upon the *meaning* of those words. This court believes that, assuming that one does so, the basic principle behind those words is close to indisputable, regardless of whether supervisors or regular officers are involved. Indeed, this court would be interested in hearing a straight-faced argument as to why an officer who "affirmatively participates in the acts that cause [a] constitutional deprivation" should not even have to explain his actions to a jury. In seeking reconsideration, defendant relies heavily upon rather superficial arguments, such as whether other decisions used *Gates'* exact "affirmatively participates" language. It seems clear to this court, however, that "affirmatively participates in the acts that cause the constitutional deprivation" is simply another

4

way of saying that 1) there was more than one act which caused a constitutional violation and 2) the defendant committed one of those acts.

While this court has, regrettably, not had a great deal of free time during this trial to fully research the case law in this context, it is confident that there are a large number of decisions which have found liability under facts such as these. To give merely one example, this court submits that the Fifth Circuit's entire body of bystander liability case law is based upon the principle that when one officer's unreasonable seizure of a suspect and another officer's unreasonable decision to stand and watch that seizure combine to cause a Fourth Amendment violation, both officers may be held liable. Considered as a matter of substance, this strikes this court as simply a different way of expressing *Gates*' holding.

In both the bystander liability and *Gates* contexts, there are multiple objectively unreasonable acts or omissions by multiple officers which combine to cause a Fourth Amendment violation even though, in most cases, only one of the defendants personally "seized" the suspect. This court believes that the fact that both *Gates* and the bystander liability case law provide for liability of each officer in this context is not some extraordinary leap of logic applicable only to supervisors or bystanders, but, rather, a common-sensical application of joint causation principles which is applicable whenever two officers commit two objectively unreasonable acts or omissions which combine to cause a seizure in violation of the Fourth Amendment. Under these circumstances, what possible rationale would permit dismissal of one of the officers, who – again – committed an objectively unreasonable act which was a proximate cause of a Fourth Amendment violation, simply because another officer was the only one to physically seize the suspect? None that makes any sense to this court.

5

This court submits that a body of case law has built up in the supervisor and bystander liability contexts simply because those are, factually speaking, the most common scenarios in which a second officer contributes to an unlawful seizure without being the one to personally commit it. To be certain, the "another officer fired his weapon first" scenario in this case is a much less common one, and, as is so often the case with the "clearly established" prong, a defendant who is fortunate enough to have (arguably) committed a constitutional violation in a less common factual context is able to benefit from the comparative lack of case law in that area. Nevertheless, the common-sensical principles of joint causation which undergird the supervisor and bystander liability bodies of case law strike this court as fully applicable in this case, and any use of the "clearly established" prong to get around this fact would, in this court's view, represent an improperly narrow application of that prong.

Considered in this vein, this court will deny defendant's motion for reconsideration, but it will attempt to strengthen its recitation of clearly established law by relying not upon a single decision such as *Gates*, but rather upon the Fifth Circuit's general approach to joint causation issues in excessive force cases. This court has not definitively decided upon any particular language for its instruction, but it will most likely be along the lines that:

> It is a basic principle of the U.S. Supreme Court's Fourth Amendment jurisprudence, set forth in many cases and in the instructions I am giving you today, that if an officer intentionally acts in a manner which is objectively unreasonable and if that unreasonable conduct proximately causes a suspect to suffer an unlawful Fourth Amendment seizure, then that officer may be held liable under the Fourth Amendment. Moreover, the Fifth Circuit has held in multiple contexts that, when two different officers commit separate acts or omissions which 1) are each objectively unreasonable and 2) those unreasonable acts combine to cause a suspect to suffer an unlawful Fourth Amendment seizure, then each officer may be held liable for his or her objectively unreasonable act. In so holding, the Fifth Circuit has made it clear that there is no exception to the basic principle stated above for cases in which one officer's unreasonable conduct combines with that of another to cause a Fourth Amendment violation. This is true even if only one of the officers physically strikes (or "seizes" the suspect). Therefore, at the time of their actions in this case, both of the defendant officers were on notice that if they intentionally acted

6

in a manner which was objectively unreasonable, and if their unreasonable conduct proximately caused the plaintiff to suffer a Fourth Amendment violation, then they could be held liable for that conduct.

With regard to Maze, this court intends to add language that:

> In this case, it is undisputed that while Officer Maze did not fire the fatal shot that killed Ismael Lopez, he was the first officer to discharge his weapon during the events of this case. Under these circumstances, if you find that Officer Maze's actions were 1) objectively unreasonable and 2) caused Officer Durden to fire his weapon at Ismael Lopez in an objectively unreasonable manner, then you may hold Officer Maze liable for his actions in this case. In considering the causation issues in this context, you should apply the principles set forth in the causation instruction I have given you.

This court believes that this language is a better way of expressing the reality of this issue, which is that plaintiff is simply seeking to hold Officer Maze liable for an unlawful Fourth Amendment seizure which Ismael Lopez allegedly suffered as a proximate result of Maze's objectively unreasonable conduct. That is basic Fourth Amendment law, well established at the time of the relevant events in this case. This court notes that the basic principle of Fourth Amendment jurisprudence stated above is set forth in many hundreds of federal appellate cases, as well as the model Fifth Circuit jury instructions in this case. Having said that, this court does not deny that there are, as many commentators have recognized, aspects of the US Supreme Court's qualified immunity jurisprudence which are unclear.[3] This court believes that the basic principles of Fourth Amendment jurisprudence discussed above are clear, however.

As precedent supporting this court's reference to Fifth Circuit law above, it relies upon the Fifth Circuit's entire body of bystander liability and supervisor liability case law, including but not limited to *Gates*. This court notes that, in its view, citation to these Fifth Circuit cases is quite arguably unnecessary, since it merely serves to confirm that the basic rule of Fourth

---

[3] This court notes, for example, that some appellate judges require a much greater showing of precedent directly on point than others in qualified immunity cases.

7

Amendment liability stated above applies in multi-officer situations. In this vein, this Fifth Circuit case law merely serves to negate Maze's invalid and legally baseless argument that he, unlike other officers, should not be held liable for his objectively unreasonable conduct which proximately causes a suspect to suffer an unlawful Fourth Amendment seizure, merely because some other officer was the only one to strike the suspect. The Fifth Circuit's bystander and supervisor liability case law makes clear that this is an untenable argument set forth by Maze, but the "clearly established law" supporting his liability is already set forth in the basic principles of Fourth Amendment law discussed above. This court makes an express finding that the bodies of Fifth Circuit case law discussed above are not some aberration applicable only to bystanders and supervisors, but, rather, flow naturally from joint causation principles, the basic Fourth Amendment principle stated above, and basic common sense. This court therefore finds the common-sensical approach in those bodies of case law to be fully applicable here.

The above approach makes complete sense to this court, and it believes that refusing to apply this common-sensical approach to joint causation issues simply because Maze is neither a supervisor nor a bystander would be an absurd result. Of course, the "clearly established" prong is known for producing absurd results,[4] and it at least seems possible that this case will

---

[4] In a now-famous 2019 concurrence, Fifth Circuit Judge Don Willett offered an eloquent criticism of the absurdities of the "clearly established" prong, describing it as:
> Section 1983 meets Catch-22. Plaintiffs must produce precedent even as fewer courts are producing precedent. Important constitutional questions go unanswered precisely because no one's answered them before. Courts then rely on that judicial silence to conclude there's no equivalent case on the books. No precedent = no clearly established law = no liability. An Escherian Stairwell. Heads government wins, tails plaintiff loses.

*Zadeh v. Robinson*, 928 F.3d 457, 479–80 (5th Cir. 2019)(Willett concurring).

eventually end up mounted above its fireplace as another example of this fact. But this court will not be the one to put it there. This court will accordingly deny defendant's motion for reconsideration, but it will attempt to strengthen the conclusions of law discussed in its prior order in the manner discussed above.

It is therefore ordered that defendant's motion to reconsider is denied.

So ordered, this, the 13th day of September, 2023.

_____
UNITED STATES DISTRICT COURT JUDGE